T.C. Memo. 1997-87


UNITED STATES TAX COURT


BEVERLY D. GOINGS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12090-94.              Filed February 19, 1997.


Randy P. Zinna, for petitioner.

Stevens E. Moore, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


WRIGHT, Judge: Respondent determined deficiencies in, additions to, and penalties on petitioner's Federal income tax for taxable years 1985 through 1990 in the following amounts:[1]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years at issue,
(continued...)

| Year | Deficiency | 6653(b)(1) | 6653(b)(2) | 6653(b)(1)(A) | 6653(b)(1)(B) | 6661 | 6663 |
|---|---|---|---|---|---|---|---|
| 1985 | $49,562 | $ 24,781 | [1] | --- | --- | $12,391 | --- |
| 1986 | 66,134 | --- | --- | $99,125 | [2] | 33,042 | --- |
| 1987 | 97,352 | --- | --- | $73,014 | [3] | 24,338 | --- |
| 1988 | 1,473 | 108,178 | --- | --- | --- | 36,059 | --- |
| 1989 | 21,904 | --- | --- | --- | --- | --- | $16,428 |
| 1990 | 3,300 | --- | --- | --- | --- | --- | 2,475 |

[1] 50% of the interest due on $49,562
[2] 50% of the interest due on $132,166
[3] 50% of the interest due on $97,352

After concessions, the issues for decision are:

(1) Whether petitioner is liable for additions to tax and penalties for fraud under section 6653(b) or section 6663 for any taxable year at issue. We hold that she is not.

(2) Whether petitioner qualifies for "innocent spouse" relief under section 6013(e) for any taxable year at issue. We hold that she does not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein. At the time the petition was filed in this case, petitioner resided in Baton Rouge, Louisiana. During the years at issue, petitioner was married to Wayne T. Goings (Mr. Goings). Petitioner and Mr. Goings (occasionally the couple) were divorced on March 19, 1993. The couple filed joint Federal income tax returns for each taxable year at issue.

Petitioner is a high school graduate. She is also a graduate of a secretarial school, having completed a 9-month

---

[1](...continued)
and all Rule references are to the Tax Court Rules of Practice and Procedure.

training program.  In 1964, upon completion of the above-referenced secretarial training program, petitioner began working for the Louisiana State Department of Transportation (LSDT) as a secretary in LSDT's legal department.  She remained with LSDT until January 1988, when she began working part time as a secretary in a law firm located in Baton Rouge, Louisiana.  Petitioner quit this part-time position shortly after obtaining it.  Petitioner's income from wages during the taxable years at issue were as follows:

| Year | Wage Income |
|------|-------------|
| 1985 | $13,426.66 |
| 1986 | 13,413.74 |
| 1987 | 14,394.71 |
| 1988 | 22,775.85 |
| 1989 | 10,800.00 |
| 1990 | 9,768.00 |

Like petitioner, Mr. Goings earned a high school diploma.  Thereafter, without earning a degree, he attended three State universities between June 1964 and April 1969.  Following a short recess, Mr. Goings returned to college and obtained a bachelor's degree in general studies in 1973.  Commencing in 1969, Mr. Goings was employed by Allied-Signal, Inc. (Allied).  Allied, among other things, produced polyethylene resin.  During the years at issue, Mr. Goings was Allied's distribution manager.  Mr. Goings received the following income from wages during the years at issue:

| Year | Wage Income |
|------|-------------|
| 1985 | $49,754.84 |
| 1986 | 54,745.39 |
| 1987 | 65,025.18 |
| 1988 | 57,669.00 |
| 1989 | 59,259.99 |
| 1990 | 88,275.39 |

In 1984, petitioner and Mr. Goings created a corporation called Bevway Chemical Corporation, Inc. (Bevway) The name Bevway consists of the first three letters of Beverly and Wayne, petitioner's and Mr. Goings' first names. Before its dissolution in 1991, Bevway was in the business of brokering scrap resin.

Also occurring in 1984, petitioner, Mr. Goings, Robert S. Morris (Morris), and Mary B. Morris formed a corporation called Deep South Chemical Corporation (Deep South). Deep South was in the business of mixing resin with other chemicals. Deep South was dissolved in May 1986.

In October 1985, Mr. Goings and Morris formed Highland Enterprises, Inc. (Highland). Shortly after its formation, Highland purchased Deep South's assets and began conducting Deep South's business. Morris eventually terminated his ownership position in Highland, leaving petitioner and Mr. Goings as Highland's sole owners.

Robert Bordelon (Bordelon) was an established customer of Allied. He was in the business of processing scrap resin into marketable pellets. In order to assure a ready supply of scrap

resin for his business, Bordelon made monetary payments to Mr. Goings during each taxable year at issue. In exchange for these kickback payments, Mr. Goings, in his capacity as Allied's distribution manager, made Allied's scrap resin available for Bordelon to purchase. These kickback payments were in addition to the price Bordelon paid Allied for the resin. Bordelon made the following kickback payments to Mr. Goings:

| Year | Kickback |
|------|----------|
| 1985 | $110,000 |
| 1986 | 139,000 |
| 1987 | 230,000 |
| 1988 | 492,000 |
| 1989 | 66,000 |
| 1990 | 10,000 |

Allied was unaware of Bordelon's payments to Mr. Goings and expressly prohibited its employees from establishing such payment arrangements with its customers.

Petitioner and Mr. Goings did not report any of the payments Bordelon made to Mr. Goings on their original returns for any taxable year at issue. They did, however, report $27,000 of the $139,000 that Mr. Goings received from Bordelon in 1986 as gross receipts on Bevway's corporate tax returns for taxable years 1986 and 1987.

Cheryl Millin (Millin) prepared the couple's joint returns for 1985 through 1990. Millin also prepared income tax returns for Bevway, Deep South, and Highland. Millin was unaware of

Bordelon's payments to Mr. Goings at the time she prepared the couple's joint returns for taxable years 1985 through 1988. She first learned of such payments when Mr. Goings inquired as to the procedure for filing amended tax returns sometime in 1989. Petitioner did not review any of the couple's joint returns prior to signing them.

In September 1989, the IRS initiated an examination of Bordelon's 1987 Federal individual income tax return. That examination revealed Bordelon's kickback payments to Mr. Goings. The examination also revealed that Bordelon had not issued a Form 1099 to Mr. Goings with respect to any of the kickback payments. Bordelon subsequently issued a Form 1099 to Mr. Goings with respect to the payments made in taxable years 1986, 1987, 1988, and 1989.[2]

In November 1989, after receiving the Forms 1099 from Bordelon, Mr. Goings and petitioner filed amended tax returns for taxable years 1986, 1987, and 1988 (the amended returns). Each amended return listed the kickback payments as income and contained the corresponding additional tax payment. Petitioner and Mr. Goings did not amend their 1989 tax return, and it is unclear from the record whether they amended their 1985 or 1990 returns.

---

[2]It is unclear from the record whether Bordelon issued a Form 1099 to Mr. Goings with respect to the payments made in 1985 and 1990.

Also occurring in November 1989, the IRS initiated an examination of the couple's original returns for taxable years 1985 through 1988. This examination revealed that the kickback payments were not reported on those returns. In October 1990, the IRS sent an appointment letter to petitioner and Mr. Goings explaining that the IRS was auditing the couple's returns for 1987 and 1988.[3] The letter sought to schedule an appointment with petitioner and Mr. Goings at their home. Shortly after receipt of that letter, Mr. Goings contacted the IRS and confirmed the appointment.

On November 5, 1990, Revenue Agent Jeanne Gavin (Gavin) arrived at the couple's home. Gavin was greeted by Mr. Goings and was informed that petitioner would not be present at the meeting. Gavin conducted the interview with Mr. Goings. In the course of the meeting, Goings informed Gavin that he was aware of how much money he had received from Bordelon and that Bordelon had only made kickback payments to him in 1986, 1987, and 1988. Mr. Goings also admitted that he knew such payments should have been reported on his tax returns.

In December 1990, Gavin recommended that a criminal investigation be instituted against petitioner and Mr. Goings. A criminal investigation was subsequently initiated against Mr. Goings, but it did not extend to petitioner. In July 1993, Mr.

---

[3]The examination was eventually extended to cover 1985 through 1990.

Goings was indicted under section 7206(1) for two counts of filing false Federal income tax returns for taxable years 1987 and 1988. It was the omission of the income received from Bordelon from the couple's joint returns that gave rise to this indictment. In January 1994, Mr. Goings entered a guilty plea to both counts. His sentence included an 11-month prison term. During the course of the criminal proceedings, Mr. Goings admitted to receiving the $1,047,000 in income described above from Bordelon.

In April 1991, petitioner and Mr. Goings formed an irrevocable trust (the trust), transferring three parcels of real property and several items of equipment to the trust. The couple's three children were the beneficiaries of the trust. Of the three parcels of real estate transferred to the trust, one was purchased in November 1981 for $26,000, one was purchased in September 1987 for $315,000, and one was purchased in November 1989 for $15,000. In 1991, petitioner transferred real property worth $146,280 to the trust. Between 1992 and 1994, Highland paid the following amounts of rent to the trust for use of various pieces of equipment and the real property described above as having been purchased in 1987 for $315,000:

| Year | Amount |
|------|--------|
| 1992 | $40,940 |
| 1993 | 28,223 |
| 1994 | 49,038 |

Between 1992 and 1994, the trust distributed the following amounts to its three beneficiaries:

| Year | Amount |
| --- | --- |
| 1992 | $40,000 |
| 1993 | 32,693 |
| 1994 | 49,038 |

During the years at issue, petitioner and Mr. Goings maintained at least one joint checking account (the joint account). Petitioner managed this account. She balanced it periodically and paid her family's household bills with checks drawn against it. The couple also maintained a joint investment account with Merrill Lynch (the Merrill Lynch account). Petitioner and Mr. Goings opened the Merrill Lynch account in March 1986 with an initial investment of $150,000. The account statements for the Merrill Lynch account were sent to the couple's home. In addition to the two accounts previously noted, Mr. Goings also maintained an individual account (the individual account) to which petitioner did not have signatory access. Petitioner, however, was aware of the individual account and drew two checks against it by signing Mr. Goings's name. The payments Bordelon made to Mr. Goings were deposited in the couple's accounts as follows:

| Year | Payment Amount | Bevway Corporation | Individual Account | Joint Account | Merrill Lynch Account |
|------|----------------|--------------------|--------------------|---------------|-----------------------|
| 1985 | $110,000 | $10,000 | | $62,767 | |
| 1986 | 139,000 | 27,000 | $ 11,000 | 48,000 | $ 53,000 |
| 1987 | 230,000 | | | | 230,000 |
| 1988 | 492,000 | | 81,000 | | 411,000 |
| 1989 | 66,000 | | | | 66,000 |
| 1990 | 10,000 | | 10,000 | | |
| Totals | $1,047,000 | $37,000 | $102,000 | $110,767 | $760,000 |

Respondent determined that petitioner and Mr. Goings had unreported income in the following amounts and from the following sources:

| Source | 1985 | 1986 | 1987 | 1988 | 1989 | 1990 |
|--------|------|------|------|------|------|------|
| Payments from Bordelon | $110,000 | $112,000 | $230,000 | $492,000 | $66,000 | $10,000 |
| Dividends from Allied | 24 | | | | | |
| Other Income | | | | | | |
| Bevway | | | 15,000 | | | |
| Highland | | 50,250 | | | | |
| Total | $110,024 | $162,250 | $245,000 | $492,000 | $66,000 | $10,000 |

Respondent mailed the notice of deficiency to petitioner on April 15, 1994.

OPINION

Petitioner concedes that she is not entitled to "innocent spouse" relief for taxable year 1990.  Additionally, petitioner did not raise the affirmative defense of the statute of limitations in her pleadings for any taxable year at issue. Accordingly, we find that petitioner has waived such defense. Rule 39.

Prior to resolving the issues of this case, it is necessary to address a preliminary matter.  Petitioner devotes an extensive portion of her posttrial briefs to a contention that certain testimony elicited at trial from Revenue Agent Gavin was inadmissable hearsay.  Petitioner further maintains that the issues of this case should be resolved in her favor because, petitioner maintains, respondent's arguments are dependent upon such inadmissable hearsay.  We refrain from presenting a discussion of the admissibility of specific portions of Agent Gavin's testimony because, contrary to petitioner's assertion, the extent of respondent's reliance upon such testimony is limited to respondent's fraud argument and only insignificantly, if at all, extends to her innocent spouse argument.  As is discussed below, we resolve the issue of fraud in petitioner's favor.  We reach our conclusion with respect to the "innocent spouse" issue without considering the contested portions of Agent Gavin's testimony.

Issue 1.  Addition to Tax for Fraud.

Respondent bears the burden of proving fraud by clear and convincing evidence.  Sec. 7454(a); Rule 142(b).  Respondent must establish that petitioner underpaid her taxes for each taxable year at issue and that some part of that underpayment was due to petitioner's intent to conceal, mislead, or otherwise prevent the collection of such taxes.  Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983); see also Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81.  For the reasons set forth below, we find that respondent has failed to satisfy her burden.

The issue of fraud presents a factual question that must be decided on the basis of an examination of all the evidence in the record.  Mensik v. Commissioner, 328 F.2d 147 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Stone v. Commissioner, 56 T.C. 213, 224 (1971); Stratton v. Commissioner, 54 T.C. 255, 284, supplemented by 54 T.C. 1351 (1970).  Fraud is never presumed; it must be established by some independent evidence of fraudulent intent.  Beaver v. Commissioner, 55 T.C. 85 (1970).  Fraud may be proved by circumstantial evidence and inferences drawn from the record because direct proof of a taxpayer's intent is rarely available.  Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, 80 T.C. 1111 (1983); Stephenson v. Commissioner, 79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984).

Fraudulent intent may be inferred from various "badges of fraud," including understatement of income, implausible or inconsistent explanations of behavior, concealing assets, and failure to cooperate with tax authorities.  See Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Webb v. Commissioner, supra at 379; Marcus v. Commissioner, 70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980).  A taxpayer's sophistication, education, and intelligence may be considered in determining whether or not he or she had fraudulent intent. Halle v. Commissioner, 175 F.2d 500, 503 (2d Cir. 1949), affg. 7 T.C. 245 (1946); Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992).  The taxpayer's evasiveness on the stand, inconsistencies in his or her testimony, and the lack of credibility of such testimony are factors in considering the fraud issue.  Bradford v. Commissioner, supra; Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25.

Following a careful review of the record, we conclude that respondent has failed to satisfy her burden with respect to this issue.  Although respondent has clearly and convincingly established that an underpayment exists with respect to each taxable year at issue, she has not clearly and convincingly established that a portion of any such underpayment was due to petitioner's fraud.  The four indicia of fraud cited by respondent do little more than suggest that petitioner may have

collaborated with Mr. Goings to understate their combined income. Such indicia, however, do not satisfy respondent's burden of proof. Stated simply, we find respondent's argument with respect to this issue thin and unpersuasive.

Issue 2. Innocent Spouse.

As a general rule, a husband and wife who file joint tax returns are jointly and severally liable for Federal income tax due on their combined incomes. Sec. 6013(d)(3); Park v. Commissioner, 25 F.3d 1289, 1292 (5th Cir. 1994), affg. T.C. Memo. 1993-252. Section 6013(e), however, mitigates this general rule to some extent. Park v. Commissioner, supra. Nonetheless, Congress regards joint and several liability as an important counterpart to the privilege of filing joint tax returns, which generally results in a lower tax on the combined incomes of spouses than would be due were they to file separate returns, and any relaxation of the rule of joint and several liability depends upon compliance with the conditions of section 6013(e). Sonnenborn v. Commissioner, 57 T.C. 373, 380-381 (1971). However, because of its remedial purpose, the "innocent spouse" rule, as section 6013(e) is commonly referred, must not be given an unduly narrow or restrictive reading. Sanders v. United States, 509 F.2d 162, 167 (5th Cir. 1975). The question of whether a taxpayer has established that he or she is entitled to relief as an "innocent spouse" is one of fact. Park v. Commissioner, supra at 1291.

Pursuant to section 6013(e)(1), an "innocent spouse" is relieved of liability if he or she proves: (1) A joint return has been made for a taxable year; (2) on such return there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) he or she did not know, and had no reason to know, of such understatement when he or she signed the return; and (4) after consideration of all the facts and circumstances, it would be inequitable to hold him or her liable for the deficiency in income tax attributable to such understatement. See Park v. Commissioner, supra at 1292. Petitioner bears the burden of establishing that each of the four requirements of section 6013(e) has been satisfied. Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Sonnenborn v. Commissioner, supra at 381-383. Moreover, the requirements of section 6013(e) are conjunctive; a failure to meet any one requirement prevents a spouse from qualifying for relief. Park v. Commissioner, supra at 1292; Purcell v. Commissioner, supra; Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).

The parties agree that petitioner and Mr. Goings filed a joint return for each taxable year at issue. The parties also agree that there is a substantial understatement of tax attributable to grossly erroneous items of Mr. Goings for each taxable year at issue. Respondent contends, however, that petitioner knew or had reason to know of such substantial

understatements and that it would not be inequitable to hold her liable for the deficiencies attributable to those understatements.  Petitioner disagrees.

Section 6013(e)(1)(C)

In resolving whether petitioner had reason to know that the returns she signed for the years at issue contained substantial understatements within the meaning of section 6013(e)(1)(C), the Court must inquire whether a reasonably prudent person, under the circumstances of petitioner, could have been expected to know at the time of signing each return that each such return contained a substantial understatement or that further investigation was warranted.   Bliss v. Commissioner, 59 F.3d 374, 378 (2d Cir. 1995), affg. T.C. Memo. 1993-390; Park v. Commissioner, supra at 1293 (citing Sanders v. United States, supra at 166-167 and n.5); Bokum v. Commissioner, supra at 148.  The relevant knowledge is of the transaction giving rise to the income omitted from the return, rather than of the tax consequences of such transaction. Quinn v. Commissioner, 524 F.2d 617, 626 (7th Cir. 1975), affg. 62 T.C. 223 (1974).  Consequently, a spouse who has reason to know of such a transaction does not qualify for relief as an "innocent spouse".  Park v. Commissioner, supra; Sanders v. United States, supra.  Additionally, a spouse may have a duty to inquire further if he or she knows enough facts so as to be placed on notice of the possibility of a substantial understatement.  Guth v. Commissioner, 897 F.2d 441, 444-445 (9th

Cir. 1990), affg. T.C. Memo. 1987-522.  Factors to be considered in determining whether a taxpayer had reason to know within the meaning of section 6013(e)(1)(C) include:  (1) The level of education of the spouse seeking relief; (2) the alleged innocent spouse's involvement in his or her family's financial and business activities; (3) any substantial unexplained increase in the family's standard of living; and (4) the culpable spouse's evasiveness and deceit about the family's finances.  Park v. Commissioner, supra at 1293.  In reaching our decision, we consider the interaction among these factors, and different factors may predominate in different cases.  Bliss v. Commissioner, supra at 378.

With respect to each taxable year at issue, we find that petitioner has failed to establish that she had no reason to know that her joint return contained a substantial understatement.

We first consider petitioner's level of education.  Despite her brief attendance at a secretarial trade school, we find that petitioner is not formally educated beyond the high school level. The trade school petitioner attended was not an institution of higher learning, and we reject respondent's attempts to characterize it as such.  The secretarial training petitioner received was practical in nature and was designed to prepare students to enter the labor force with skills necessary to perform secretarial duties effectively and efficiently.  Such

training was not otherwise designed to advance the level of petitioner's formal education.

Respondent contends that petitioner's 20-plus years as a secretary in LSDT's legal department serves as an adequate substitute for petitioner's lack of formal education beyond the high school level. We disagree, and, in light of the entire record, coupled with our observations of petitioner at trial, conclude that this factor narrowly favors petitioner.

We next consider petitioner's involvement in her family's financial and business affairs. Perfect knowledge of one's family's financial affairs is not required to satisfy the reason to know standard. Shea v. Commissioner, 780 F.2d 561, 567 (6th Cir. 1986), affg. in part, revg. in part and remanding T.C. Memo 1984-310; Sanders v. Commissioner, 509 F.2d at 168. We conclude that petitioner has failed to establish that her involvement in her family's affairs was insufficient to put a reasonable person in her position on notice that the income reported in the returns at issue was erroneous or that further inquiry was warranted.

While petitioner maintains that Mr. Goings had exclusive control of her family's financial affairs, this contention is contradicted by petitioner's own testimony. Petitioner testified that she, not Mr. Goings, managed her family's joint checking account. In 1985 and 1986, $62,767 and $48,000, respectively, of the funds Bordelon paid Mr. Goings were deposited into the joint account managed by petitioner. Such deposits are significant in

light of petitioner's testimony that, although she was unaware of her husband's annual salary from Allied, she believed that such salary was approximately $50,000. Petitioner does not attempt to explain this disparity. That is, petitioner does not attempt to explain how Mr. Goings could deposit the above amounts into the joint account while supposedly earning $50,000 per year. A taxpayer claiming innocent spouse relief cannot simply turn a blind eye to facts within his or her reach that would have put a reasonably prudent taxpayer on notice that further inquiry needed to be made. Sanders v. United States, supra at 169.

Similarly, the couple's Merrill Lynch investment account was also a joint account, and, between 1987 and 1989, a total of $760,000 was deposited into such account. The statements for the Merrill Lynch account were mailed to the couple's residence and were readily available for petitioner's review. We decline to accept petitioner's self-serving testimony that she never examined such records because such testimony is unreasonable and lacks credibility.

The third factor we consider is the presence of unusual or lavish expenditures by petitioner's family. A taxpayer claiming relief as an innocent spouse cannot close his or her eyes to unusual or lavish expenditures that might have alerted him or her to unreported income. Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979); Mysse v. Commissioner, 57 T.C. 680, 699 (1972). The presence of unusual or lavish expenditures may put a taxpayer on

notice that it is probable that income is being omitted from a joint return. Estate of Jackson v. Commissioner, 72 T.C. 356, 361 (1979).

We agree with respondent that the record contains ample instances of unusual or lavish expenditures that should have placed petitioner on notice that she and Mr. Goings were spending more money than they were reporting on their joint returns. In 1985, the couple purchased two pieces of real estate for a total purchase price of $190,000. They paid $47,500 in cash and financed the remainder with a note requiring quarterly installment payments of approximately $8,000. Similarly, in 1986 the couple established their Merrill Lynch investment account with $150,000. In 1987, petitioner and Mr. Goings made another real estate purchase, paying the entire $315,000 purchase price in cash. In 1989, the couple paid delinquent taxes in the amount of $297,345. Petitioner and Mr. Goings also purchased real estate in 1990 for $95,000 in cash.

Petitioner's argument with respect to this factor is cursory and lacks meaningful substance. At trial, when questioned about the above-referenced real estate purchases and the creation of the investment account, petitioner acknowledged her signature on related documents but emphatically denied knowing anything about the substance of the underlying transactions. Specifically, petitioner claims that she routinely signed documents without reading them and that the documents relating to the above-

referenced real estate purchases and the creation of the investment account were among the documents that she signed without reading. Petitioner also explains that the absence of unusual or lavish expenditures is apparent from the fact that her children attended public schools and that she did not make any substantial expenditures herself.

We are not persuaded by petitioner's assertions in this regard. Because her testimony is self-serving and lacks credibility, we decline to accept it. Accordingly, we conclude that this factor favors respondent.

The fourth factor we consider is whether Mr. Goings was forthright about the omitted income. Petitioner has not established that Mr. Goings was evasive concerning his true level of income. It is obvious from the record that Mr. Goings did not attempt to conceal the kickback income from petitioner. Indeed, quite the contrary is true. Mr. Goings deposited approximately 83 percent, or $870,767, of the kickback income into the couple's joint accounts. Nearly 11 percent of the kickback income was deposited into an account managed by petitioner. In contrast, less than 10 percent of the kickback income was deposited in Mr. Goings's exclusive account. Although making deposits into an exclusive account may indicate evasive intent, we hesitate to conclude that Mr. Goings possessed such intent in light of the amount of funds he deposited into the couple's joint accounts.

Having thoroughly examined the circumstances of the instant case, we conclude that petitioner has failed to establish that she had no reason to know of the substantial understatements of tax contained on her joint returns resulting from the omission of the income that Mr. Goings received from Bordelon during each of the taxable years at issue. Of the four factors discussed above, only petitioner's level of education supports her argument. The weight we attribute to such factor, however, does not exceed the amount of weight we attribute to any of the remaining three factors, each of which favors respondent. Accordingly, we find that, based on the entire record, petitioner had reason to know of the substantial understatement of tax on her joint returns for each taxable year at issue resulting from the omission of the income that Mr. Goings received from Bordelon.

### Section 6013(e)(1)(D)

The next matter we consider is whether it would be inequitable to hold petitioner liable for the deficiencies in tax attributable to the omitted kickback income. See sec. 6013(e)(1)(D). In answering this question, we take into account all of the facts and circumstances. Id.; sec. 1.6013-5(b), Income Tax Regs. A factor to be considered is whether the spouse seeking relief significantly benefited, either directly or indirectly, from the omitted income. Buchine v. Commissioner, 20 F.3d 173, 181 (5th Cir. 1994), affg. T.C. Memo. 1992-36; sec. 1.6013-5(b), Income Tax Regs. Normal support, which is to be

measured by a couple's circumstances, is not considered a significant benefit. Sanders v. United States, 509 F.2d at 168; Terzian v. Commissioner, 72 T.C. at 1172; Mysse v. Commissioner, 57 T.C. at 699. A significant benefit exists if expenditures have been made which are unusual for the taxpayer's accustomed lifestyle. Terzian v. Commissioner, supra. Other factors include: (1) Whether the spouse seeking relief has been deserted by the other spouse or is divorced or separated from that spouse, sec. 1.6013-5(b), Income Tax Regs.; and (2) probable future hardships that would be visited upon the purportedly "innocent spouse" were he or she not relieved from liability. Sanders v. United States, supra at 171 n.16.

Based upon the record in the instant case, we conclude that petitioner has failed to establish that she did not receive significant benefits from the funds that Mr. Goings received from Bordelon. Petitioner has failed to establish that Mr. Goings used the kickback funds in a manner that did not benefit her significantly. To the contrary, the record indicates that such funds were used for the significant benefit of the family. A total of $110,767, or nearly 11 percent, of the omitted income was deposited into the couple's joint checking account. Petitioner managed and drew checks against that account. Similarly, $760,000 of the kickback funds was deposited into the couple's joint Merrill Lynch investment account and was subsequently invested in various assets. Additionally,

petitioner and Mr. Goings made substantial real estate purchases, presumably using, at least in part, funds received from Bordelon. Her attempts to explain such purchases are unpersuasive. Moreover, petitioner has not established that such benefits were consistent with her then-existing lifestyle, nor has she established that they constituted normal support.

When assessing whether it would be inequitable to hold petitioner liable for the deficiencies attributable to Mr. Going's receipt of unreported income, we also consider whether petitioner was deserted or divorced subsequent to that activity. Although petitioner and Mr. Goings were divorced in 1993, we find that such circumstance does not outweigh the significant benefits petitioner received from the omitted kickback income. Furthermore, petitioner has not established that any hardship she would encounter as a result of incurring liability for the deficiencies attributable to the omission of the kickback income from the joint returns at issue would make it inequitable to hold her jointly liable for those deficiencies.

Accordingly, we find that it would not be inequitable to hold petitioner liable for the understatements attributable to the funds Mr. Goings received from Bordelon during the taxable years at issue.

Because petitioner has failed to satisfy all of the conjunctive factors set forth in section 6013(e)(1), we hold that she does not qualify for "innocent spouse" relief and is

therefore jointly and severally liable for the deficiencies in tax, additions to tax, and penalties for each taxable year at issue.  However, petitioner is not liable for any additions to tax or penalties for fraud.

   To reflect the foregoing,

<u>Decision will be entered under Rule 155.</u>