T.C. Memo. 2015-90

UNITED STATES TAX COURT

KHUONG DUONG, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

DUNG T. TRAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 14991-13, 15151-13.          Filed May 11, 2015.

Khuong Duong and Dung T. Tran, pro sese.

Shari A. Salu, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, Judge:  For the taxable years 2007 and 2008, the Internal Revenue Service (IRS or respondent) determined against both petitioners deficiencies

[*2] in Federal income tax and civil fraud penalties under section 6663(a)[1] and against petitioner Tran certain additions to tax. The deficiencies stem mainly from petitioners' underreporting of income from two nail salons they jointly operated, AK Nails and Perfection Nails. After conducting a bank deposits analysis, the IRS made whipsaw determinations by asserting, in full against each petitioner, all taxable deposits into their joint bank accounts.

In docket No. 14991-13 respondent determined against petitioner Duong deficiencies and fraud penalties as follows:

| Year | Deficiency | Sec. 6663 |
|------|-----------|-----------|
| 2007 | $48,953 | $30,536 |
| 2008 | 18,439 | 13,201 |

In docket No. 15151-13 respondent determined against petitioner Tran deficiencies, additions to tax, and penalties as follows:

| Year | Deficiency | Sec. 6651(a)(2) | Sec. 6651(f) | Sec. 6663 | Sec. 6662(a) (alternative position) |
|------|-----------|-----------------|--------------|-----------|-------------------------------------|
| 2007 | $34,468 | $8,617 | $24,989 | -0- | -0- |
| 2008 | 14,171 | -0- | -0- | $10,628 | $2,834 |

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all dollar amounts to the nearest dollar.

**[*3]**  After concessions,[2] the issues remaining for decision are:  (1) whether petitioners failed to report income for 2007 and 2008 as determined by respondent using the bank deposits method; (2) whether petitioners are liable for fraud penalties; and (3) if petitioner Tran is not liable for the fraud penalty, whether she is liable for the accuracy-related penalty for 2008.  We answer the first question in the affirmative, and we find that petitioner Duong is liable for the fraud penalty for both years.  We find that respondent has failed to prove by clear and convincing evidence that petitioner Tran is liable for the fraud penalty but conclude that she is liable for the accuracy-related penalty for 2008.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulations of facts and the attached exhibits are incorporated by this reference.  When they petitioned this Court, petitioner Khuong Duong (Duong) lived in Severn, Maryland, and petitioner Dung T. Tran (Tran) lived in Splant City, Florida.

---

[2]Respondent has conceded the section 6651 additions to tax against petitioner Tran for 2007.  Petitioner Duong is deemed to have conceded the disallowance of a mortgage interest deduction of $22,574 on his 2007 Schedule C, Profit or Loss From Business.  He did not present any evidence concerning this issue at trial, and he did not file a posttrial brief.  See Schladweiler v. Commissioner, T.C. Memo. 2000-351, aff'd, 28 Fed. Appx. 602 (8th Cir. 2002).  Petitioners did not raise any affirmative defenses, such as the statute of limitations, in their pleadings, and we find that any such defenses are likewise waived.  See Rule 39; Goings v. Commissioner, T.C. Memo. 1997-87.

**[*4]**  Petitioners jointly owned and operated AK Nails and Perfection Nails during the years in issue and split the profits and losses 50-50.  Each salon had several nail stations so that multiple stylists could serve customers simultaneously.  Tran was the main stylist and often worked alone; petitioners employed other nail stylists in both salons as necessary to meet customer demand.  Petitioners paid these stylists a wage by check, and the stylists kept any tips that customers gave them.  Customers paid for the salon services and tips by credit card, debit card, or cash.  Duong functioned as a store manager and did not act as a nail stylist.

Although petitioners were not married during 2007, they filed a joint Federal income tax return for that year.  They attached to this return a Schedule C, Profit or Loss From Business, reporting gross receipts of $37,469 from AK Nails.  For 2008 each petitioner filed an individual return using the "single" filing status.  Tran attached to her return a Schedule C reporting gross receipts of $38,347 from AK Nails.  Duong attached to his return a Schedule C reporting gross receipts of $44,377 from Perfection Nails.

The IRS selected petitioners' returns for audit, focusing on their Schedule C income.  A revenue agent met with petitioners and toured both nail salons.  During these visits petitioners stated that they had reported on their tax returns all income received by the salons.  They denied receiving cash at either location, insisting that

**[*5]** customers made all payments by credit or debit card. Duong bears principal responsibility for making these false statements.

Petitioners did not maintain adequate books and records for their businesses. Duong declined to provide the revenue agent with bank statements or with the other limited business records that petitioners possessed. Duong bears principal responsibility for the failure to turn over business records to the revenue agent.

The revenue agent issued summonses to petitioners' banks in order to conduct a bank deposits analysis. During 2007 petitioners maintained three joint bank accounts and Duong maintained a separate joint account with his father. During 2008 petitioners maintained two joint bank accounts and Duong maintained a separate individual account. Petitioners comingled funds from these accounts and used the accounts for both business and personal activities.

Under the bank deposits method, the IRS estimates the gross receipts of a business that lacks reliable records. This analysis begins with the bank deposits made during the tax year, then adds any other income shown to have been received but not placed in a bank. From that total, various subtractions must be made for nontaxable deposits. Nontaxable deposits include loan proceeds, interaccount

[*6] transfers, gifts, inheritances, and other nontaxable items.  See Morrison v. United States, 270 F.2d 1, 2-3 (4th Cir. 1959).

The revenue agent followed this procedure here.  She started with petitioners' bank statements and calculated the total deposits made during 2007 and 2008.  From these totals she deducted deposits shown to be from nontaxable sources, including a home equity loan, other loans, transfers from other accounts, various rebates, insurance proceeds, State and Federal tax refunds, and for Doung's separate account in 2007, wages earned by his father.

For 2007 the revenue agent calculated total deposits of $235,679 in petitioners' joint accounts, less $98,866 from nontaxable sources, yielding $136,813 of presumptive gross receipts.  For 2008 she calculated total deposits of $136,826 in petitioners' joint accounts, less $36,893 from nontaxable sources, yielding $99,933 of presumptive gross receipts.  For Duong's separate account in 2007 she calculated total deposits of $20,119, less $3,092 from nontaxable sources, yielding $17,027 of additional gross receipts for Duong.  For Duong's separate account in 2008 she calculated total deposits of $51,553, less zero from nontaxable sources, yielding $51,553 of additional gross receipts for Duong.

The revenue agent then increased the presumptive gross receipts set forth above by 8% to account for tips.  Under her theory, if a salon customer tipped the

**[\*7]** stylist in cash, the cash tip would probably not be included in petitioners'
bank deposits. The IRS determined that tips presumptively received should be
added to the bank deposit totals as "other income shown to have been received but
not placed in bank." See Morrison, 270 F.2d at 2.

On the basis of the examination and the revenue agent's initial calculations,
the IRS on April 2, 2013, issued separate notices of deficiency to Duong and Tran.
They timely petitioned this Court, and the cases were consolidated. Petitioners
thereafter provided respondent with documents substantiating, for their joint bank
accounts, additional nontaxable deposits of $32,078 for 2007 and $12,190 for
2008. After allowing these items, respondent's revised position was that the gross
receipts chargeable to each petitioner, before adding 8% for tips, were as follows:

|  | 2007 | | 2008 | |
| --- | --- | --- | --- | --- |
| Item | Duong | Tran | Duong | Tran |
| Joint account deposits | $235,679 | $235,679 | $136,826 | $136,826 |
| Less nontaxable deposits | (98,866) | (98,866) | (36,893) | (36,893) |
| Duong separate deposits | 20,119 | -0- | 51,553 | -0- |
| Less nontaxable deposits | (3,092) | -0- | -0- | -0- |
| Less additional nontaxable deposits for joint accounts | (32,078) | (32,078) | (12,190) | (12,190) |
| Total gross receipts | 121,762 | 104,735 | 139,296 | 87,743 |

**[\*8]** The Court held a trial on September 30, 2014.  Respondent called the revenue agent as a witness, and she explained in detail her bank deposits analysis.  Duong spoke for both petitioners and testified on his own behalf; Tran, who was present, did not testify or conduct cross-examination.  During the recall of the revenue agent, Duong questioned her about 17 checks that he contended should be treated as additional nontaxable deposits.  The Court determined that the revenue agent's schedule of nontaxable deposits already included 14 of these checks.

The remaining three items consisted of a check from J.P. Morgan Chase for $9,000, a check from Nhut Hong Le for $3,000, and a check from Baltimore Gas & Electric Co. for $896.  Petitioners argued that the first item was a credit card cash advance, but they did not furnish the revenue agent or introduce into evidence the relevant credit card statement.  Petitioners argued that the second item was a loan, but they did not advance this contention until a week before trial and produced no evidence of a loan apart from Duong's testimony.  Petitioners argued that the third item was a utility rebate, but they provided no evidence as to whether they had deducted the original payment on a tax return.  For these reasons, the revenue agent testified as to her belief that these three checks should not be treated as nontaxable deposits.

**[\*9]** At the close of trial the Court ordered one round of seriatim briefs. Respondent timely filed his brief on January 29, 2015. Petitioners failed to file a posttrial brief.[3]

OPINION

I. Burden of Proof

The IRS' determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). For the presumption of correctness to attach to the deficiency determination in unreported income cases, the Commissioner must establish a "minimal evidentiary showing" connecting the taxpayer with the income-producing activity, see Blohm v. Commissioner, 994 F.2d 1542, 1548-1549 (11th Cir. 1993), aff'g T.C. Memo. 1991-636, or demonstrate that the taxpayer actually received unreported income, see Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982). Once respondent makes the required threshold showing, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that respondent's determinations are

---

[3]When a party fails to file a brief on issues that have been tried, we may consider those issues waived or conceded. See, e.g., Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001); Stringer v. Commissioner, 84 T.C. 693, 704-708 (1985), aff'd without published opinion, 789 F.2d 917 (4th Cir. 1986). We will exercise our discretion not to do so here for issues that were addressed at trial.

**[\*10]** arbitrary or erroneous. Helvering v. Taylor, 293 U.S. 507, 515 (1935); Tokarski v. Commissioner, 87 T.C. 74 (1986).

To satisfy his initial burden of production, respondent introduced records obtained during the IRS audit. These records establish that petitioners received unreported income. Although not necessarily required to do so, respondent has also shown that the nail salons are the likely source of petitioners' unreported income. See Stinnett v. United States, 173 F.2d 129 (4th Cir. 1949); cf. Mills v. Commissioner, 399 F.2d 744, 748-749 (4th Cir. 1968) (when using the bank deposits method, the Commissioner need not prove a likely source of income), aff'g T.C. Memo. 1967-67; Tokarski, 87 T.C. at 77. On the basis of this credible evidence, we are satisfied that the IRS' determinations, as set forth in the notices of deficiency, are entitled to the general presumption of correctness. See Power-stein v. Commissioner, T.C. Memo. 2011-271.

II.    Analysis

    A.    Unreported Income

Section 61(a) defines gross income as "all income from whatever source de-rived," including income derived from business. A taxpayer must maintain books and records establishing the amount of his or her gross income. See sec. 6001. When a taxpayer keeps no books of account or keeps books that are demonstrably

**[*11]** inaccurate, the IRS may determine his income "under such method as, in the opinion of the Secretary, does clearly reflect income." Sec. 446(b); see Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989). Where a taxpayer has poor records and large unexplained bank deposits, the Commissioner may properly employ the bank deposits method to estimate the taxpayer's income. Estate of Hague v. Commissioner, 132 F.2d 775 (2d Cir. 1943), aff'g 45 B.T.A. 104 (1941); Estate of Mason v. Commissioner, 64 T.C. 651, 657 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977). The IRS has great latitude in reconstructing a taxpayer's income, and the reconstruction "need only be reasonable in light of all surrounding facts and circumstances." Petzoldt, 92 T.C. at 687.

In the instant cases petitioners failed to maintain accurate books or records from which their Federal tax liabilities could be computed. They refused during the audit to provide the revenue agent with any records at all. Respondent was thus authorized to determine their income by using the bank deposits method.

Bank deposits are prima facie evidence of income. The bank deposits method starts with the presumption that all money deposited in a taxpayer's bank account during a given period constitutes taxable income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964). This presumption is rebutted to the extent the deposits are shown to include nontaxable amounts, and "the Government must

**[\*12]** take into account any non-taxable source \* \* \* of which it has knowledge."
Ibid.; DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), aff'd, 959 F.2d 16 (2d
Cir. 1992).

After the IRS reconstructs a taxpayer's income and determines a deficiency,
the taxpayer bears the burden of proving that the IRS' implementation of the bank
deposits analysis was unfair or inaccurate. See Clayton v. Commissioner, 102
T.C. 632, 645 (1994); DiLeo, 96 T.C. at 871-872. The taxpayer may do so by
showing (among other things) that certain deposits came from nontaxable sources.
See Clayton, 102 T.C. at 645. Nontaxable sources include funds attributable to
"loans, gifts, inheritances, or assets on hand at the beginning of the taxable per-
iod." Burgo v. Commissioner, 69 T.C. 729, 743 n.14 (1978) (quoting Troncelliti
v. Commissioner, T.C. Memo. 1971-72).

The revenue agent employed the bank deposits method to reconstruct peti-
tioners' 2007 and 2008 income. She used their bank account statements (which
are part of the record) to prepare schedules listing all deposits. She eliminated
$138,851 of nontaxable deposits using evidence of which she had knowledge.
Upon receiving more documentation from petitioners, she determined that $44,268
of additional deposits should be treated as nontaxable and eliminated them from
her analysis. In the end, she determined that $183,119 of the deposits, roughly

[*13] half the total, was nontaxable. She then estimated petitioners' unreported gross receipts by subtracting from their taxable deposits the gross receipts reported on their tax returns. We find that her implementation of the bank deposits method was reasonable.

Petitioners' primary challenge at trial to the revenue agent's methodology was the contention that she should have treated 17 specific checks as additional nontaxable deposits. We determined that the revenue agent's schedule of nontaxable deposits already included 14 of these checks. We will discuss the other three.

Duong testified that a $9,000 check from J.P. Morgan Chase was a credit card cash advance. If this allegation were true, petitioners could easily have verified it by providing the revenue agent or the Court with a credit card statement showing the alleged advance. We decline to credit Duong's uncorroborated testimony in the absence of such evidence. See, e.g., Tokarski, 87 T.C. at 77.

Duong next testified that a $3,000 check from Nhut Hong Le represented a loan from a personal friend, and that his parents later paid off this loan on his behalf. Petitioners did not advance this contention during the IRS audit, and Duong first made the argument a week before trial. Duong provided no documentary evi-

**[*14]** dence that this check represented a loan or that his parents paid off the loan. Again, we decline to credit his uncorroborated testimony.

Finally, Duong testified that an $896 check from Baltimore Gas & Electric Co. was a utility rebate that should be treated as nontaxable. However, when an amount is deducted from gross income in one year and recovered in a subsequent year, such amount is taxable in the later year if the original deduction yielded a tax benefit. See Unvert v. Commissioner, 72 T.C. 807, 812 (1979), aff'd, 656 F.2d 483 (9th Cir. 1981); W. Adjustment & Ins. Co. v. Commissioner, 45 B.T.A. 721 (1941). Petitioners failed to prove that this check was a rebate for residential electric service as opposed to electric service provided to their nail salons and previously deducted by them as such. In the absence of such evidence we will not treat the $896 check as a nontaxable receipt. See Clayton, 102 T.C. at 645.

We find that the agent's bank deposits analysis was reasonable and that petitioners failed to prove the nontaxability of any deposits beyond the $183,119 that the IRS allowed. On top of the taxable bank deposits thus determined, the revenue agent added 8% to capture tips presumptively received by petitioners but not deposited in a bank. We reject as unreliable this aspect of the IRS' approach.

The record demonstrates that only stylists received tip income. Because Duong functioned as an office manager and did not perform services as a nail

[*15] stylist, there is no support for respondent's contention that he received tip income.  We thus cannot sustain respondent's determination of tip income for Duong.

Tran was a nail stylist and presumably received some tips.  But many customers paid by credit or debit card.  If the tip was included in the total amount charged, the tip (like the fee for services) would presumably be accounted for already in the bank deposits analysis.  To the extent customers paid in cash, respondent's methodology implausibly assumes that Tran methodically segregated each service charge from the corresponding tip, depositing the former in the bank but pocketing the latter.  Moreover, Tran could keep tips only for work that she performed.  Because the salons employed other stylists, respondent's methodology would impute income to Tran for tips that other employees received.

Respondent did not analyze what percentage of the salons' customers paid in cash or what percentage of the stylist services Tran performed.  Adding 8% to Tran's share of the total gross receipts would overstate her tip income substantially, to a degree that cannot be determined.  We accordingly find that respondent's determination of additional tip income, as applied to Tran as well as to Duong, is arbitrary and erroneous.

[*16] In the notices of deficiency, respondent reasonably made whipsaw determinations and treated 100% of taxable deposits in the joint accounts as gross receipts of both petitioners. Respondent concedes on brief that "the unreported income should be allocated equally between the petitioners for the unreported deposits from their joint accounts, and wholly to petitioner Duong for the money deposited into the accounts that were not held jointly with petitioner Tran." We agree with this assessment. With that concession and with the elimination of any additional tip income to either petitioner, we sustain respondent's determinations of unreported income consistent with the revenue agent's bank deposits analysis.[4]

### B. Civil Fraud Penalty

Respondent determined fraud penalties against Duong for 2007 and 2008 and against Tran for 2008. "If any part of any underpayment of tax required to be shown on a return is due to fraud," section 6663(a) imposes a penalty of 75% of the portion of the underpayment due to fraud. Respondent has the burden of proving fraud, and he must prove it by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Richardson v. Commissioner, 509 F.3d 736, 743 (6th Cir.

---

[4]While there is no longer any dispute as to the amounts of petitioners' deductible Schedule C expenses, the allocation of those expenses (and of petitioners' reported Schedule C gross income) will have to be determined as part of the Rule 155 computations. The best evidence is that petitioners split both income and expenses 50-50.

[*17] 2007), aff'g T.C. Memo. 2006-69.  To sustain his burden respondent must establish two elements:  (1) that there was some underpayment of tax for each year in issue; and (2) that at least some portion of the underpayment for each year was due to fraud.  Hebrank v. Commissioner, 81 T.C. 640, 642 (1983).  Respondent has carried his burden of proving that petitioners underreported their income and underpaid their tax for 2007 and 2008.  The remaining question is whether any part of these underpayments was due to fraud.

Fraud is intentional wrongdoing designed to evade tax believed to be owing. Neely v. Commissioner, 116 T.C. 79, 86 (2001).  The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  Estate of Pittard v. Commissioner, 69 T.C. 391, 400 (1977).  Fraud is not to be presumed or based upon mere suspicion.  Petzoldt, 92 T.C. at 699-700.  However, because direct proof of a taxpayer's intent is rarely available, fraudulent intent may be established by circumstantial evidence.  Grossman v. Commissioner, 182 F.3d 275, 277-278 (4th Cir. 1999), aff'g T.C. Memo. 1996-452.

Circumstances that may indicate fraudulent intent, commonly referred to as "badges of fraud," include but are not limited to:  (1) understating income; (2) keeping inadequate records; (3) giving implausible or inconsistent explanations of behavior; (4) concealing income or assets; (5) failing to cooperate with tax

**[\*18]** authorities; (6) engaging in illegal activities; (7) providing testimony lacking credibility; (8) filing false documents, including false income tax returns; (9) failing to file tax returns; and (10) dealing extensively in cash. Spies v. United States, 317 U.S. 492, 499 (1943); Morse v. Commissioner, T.C. Memo. 2003-332, 86 T.C.M. (CCH) 673, 675, aff'd, 419 F.3d 829 (8th Cir. 2005). No single factor is dispositive; however, the existence of several factors "is persuasive circumstantial evidence of fraud." Vanover v. Commissioner, T.C. Memo. 2012-79, 103 T.C.M. (CCH) 1418, 1420-1421.

Numerous badges of fraud demonstrate that Duong intentionally evaded the payment of tax he knew to be owed. He understated his income for both years in issue. See Stone v. Commissioner, 56 T.C. 213, 214, 224-226 (1971). He maintained inadequate records and failed to provide relevant records to the revenue agent. See Ark. Oil & Gas, Inc. v. Commissioner, T.C. Memo. 1994-497. He gave the revenue agent inconsistent explanations, stating falsely that neither business received cash payments from customers. At trial he contradicted himself by stating, implausibly, that AK Nails customers sometimes paid in cash but that Perfection Nails customers never did so.

Duong also failed to cooperate with tax authorities. The revenue agent requested bank statements but never received them. Duong indicated that he had

**[\*19]** merchant receipts but likewise failed to provide those to respondent. Eventually, the revenue agent had to summons the bank statements. See Good v. Commissioner, T.C. Memo. 2012-323 (finding lack of cooperation where revenue agent was forced to summons taxpayer's bank records). Duong regularly commingled business and personal funds, as the bank deposits analysis made clear. And his testimony at trial concerning cash receipts and alleged nontaxable deposits lacked credibility. See Scott v. Commissioner, T.C. Memo. 2012-65.

We find that the facts, taken as a whole, clearly and convincingly establish that Duong acted with fraudulent intent and that his underpayments of tax for 2007 and 2008 were due to fraud. While several of the same badges of fraud apply to Tran, we reach the opposite conclusion as to her. Duong bears principal responsibility for the false statements made to, and the lack of cooperation with, the IRS revenue agent. Unlike Duong, Tran did not present testimony lacking credibility at trial. Our assessment of the evidence is that Tran followed the direction and actions of Duong and that her behavior does not rise to the level of fraud. We accordingly conclude that respondent did not prove fraud by Tran by clear and convincing evidence.

**[\*20]** C.　Accuracy-Related Penalty

Respondent contends in the alternative that Tran is liable for an accuracy-related penalty under section 6662(a) for 2008.  The Code imposes a 20% accuracy-related penalty on any underpayment of tax attributable to (among other things) "[n]egligence or disregard of rules or regulations."  See sec. 6662(a) and (b)(1).  "Negligence" is defined as "any failure to make a reasonable attempt to comply" with the provisions of the Code.  Sec. 6662(c).  The Commissioner bears the burden of production with respect to this penalty.  Sec. 7491(c).  Once the Commissioner satisfies his burden, the burden shifts to the taxpayer to prove that the penalty does not apply.  Higbee v. Commissioner, 116 T.C. 438, 447 (2001).  Respondent met his burden of production by showing that Tran underreported income and failed to maintain adequate records for the nail salons.  The burden thus shifts to her.

The accuracy-related penalty does not apply to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith" with respect thereto.  Sec. 6664(c)(1).  Tran did not testify and offered no reliable evidence that she attempted to assess her tax liability correctly.  We accordingly sustain respondent's imposition of the accuracy-related penalty for 2008.

- 21 -

**[\*21]**  To reflect the foregoing,

Decisions will be entered under Rule 155.