**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT D. GROSSMAN, JR.,
Petitioner-Appellant,

v.                                                    No. 98-1043

COMMISSIONER OF INTERNAL REVENUE,
Respondent-Appellee.

Appeal from the United States Tax Court.
(Tax Ct. Nos. 90-20526, 91-14364)

Argued: May 7, 1999

Decided: June 28, 1999

Before WIDENER, MOTZ, and TRAXLER, Circuit Judges.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Widener and Judge Traxler joined.

_____

**COUNSEL**

**ARGUED:** Libero Marinelli, Jr., AMARI & THERIAC, P.A., Cocoa,
Florida, for Appellant. Kenneth L. Greene, Tax Division, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellee. **ON BRIEF:** Loretta C. Argrett, Assistant Attorney Gen-
eral, Janet A. Bradley, Tax Division, UNITED STATES DEPART-
MENT OF JUSTICE, Washington, D.C., for Appellee.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Robert D. Grossman, Jr., appeals the tax court's finding that he committed civil tax fraud in connection with his 1985 and 1986 income tax returns. Grossman contends that the Commissioner failed to produce sufficient evidence to prove tax fraud, that the Internal Revenue Code's innocent spouse provision should relieve him of liability, and that tax credits arising in 1983, 1984, and 1985 eliminate any underpayment of taxes for the 1985 and 1986 tax years. Finding these arguments without merit, we affirm.

I.

The tax court carefully sorted through the voluminous record in this case and made numerous and detailed factual findings. See Grossman v. Commissioner, 72 T.C.M. (CCH) 845 (T.C. 1996). We need only briefly summarize those facts. Grossman, a practicing tax attorney with an L.L.M. in taxation from New York University, who at one time worked for the Internal Revenue Service as a senior trial attorney, has specialized in tax law for over twenty years. During the years at issue here, 1983 through 1986, Grossman filed joint tax returns with his then-wife Betsy.

Betsy, her mother Beatrice, and her brother Ben owned the Sley corporations, which operated primarily as holding companies. By 1980, Grossman ran the operations of all of the Sley corporations from an office in the Washington, D.C. office space where his private law firm was located. The Sley corporations employed a single person in its office: Tanja Baybrook, a bookkeeper.

From 1983 to 1986 Grossman and his family took numerous vacations; they used a credit card issued to one of the Sley corporations, the Markette Corporation, to pay for these trips. Grossman instructed Baybrook that the charges on the credit card should be paid with Markette Corporation funds. He never informed Baybrook that the expenses were personal and therefore not properly payable with corporate funds. In fact, Grossman himself signed the vast majority of

2

the Markette Corporation checks that Baybrook had prepared to pay the credit card charges.

The Grossmans separated in September 1986 and divorced in 1991.

Upon auditing the Grossmans' income tax returns, the Internal Revenue Service determined that the Grossmans had failed to report as income over $40,000 of constructive dividend income that they had received from 1983 to 1986 through the Sley corporations' payments for their personal vacations. The Commissioner sought to impose civil tax fraud penalties for these years on Grossman, but not Betsy. The tax court found that the Commissioner had "failed to carry the heavy burden of proof" of tax fraud for the 1983 and 1984 tax years. For 1985 and 1986, however, the court held that Grossman fraudulently failed to report $9,996.71 and $5,963.43, respectively, in constructive dividend income. Based on these deficiencies, the court imposed civil fraud penalties.

II.

Initially, Grossman contends that the Commissioner presented insufficient evidence of his intent to defraud to support the tax court's finding of tax fraud. A finding of fraud requires that the Commissioner "prove affirmatively by clear and convincing evidence actual and intentional wrongdoing on the part of the [taxpayer] with a specific intent to evade the tax." Webb v. Commissioner, 394 F.2d 366, 378 (5th Cir. 1968) (internal quotation marks omitted). Tax fraud implies "bad faith, intentional wrongdoing and a sinister motive." Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950). A taxpayer cannot be held to have committed civil tax fraud when the understatement of tax results from "inadvertence, negligence, or honest errors." Moore v. United States, 360 F.2d 353, 355 (4th Cir. 1966) (internal quotation marks omitted); Webb, 394 F.2d at 377. Intent to defraud, however, may be proven by circumstantial evidence. See United States v. Bales, 813 F.2d 1289, 1294 (4th Cir. 1987); Powell v. Grandquist, 252 F.2d 56, 61 (9th Cir. 1958); Stone v. Commissioner, 56 T.C. 213, 223-24 (1971).

In the present case, both documentary evidence and the testimony of several witnesses amply support the tax court's detailed findings

3

of fact as to Grossman's intent to defraud. The record contains evidence that Grossman was running the Sley corporations' operations during the relevant years and that he well knew that personal trips were being charged to a Markette Corporation credit card because he charged many of these expenses himself. The Sley corporations' bookkeeper testified that Grossman directed her to pay the charges on the Markette credit card with Markette Corporation's funds and never informed her that any of these charges were for personal expenses. The evidence also demonstrates that Grossman signed most of the company checks to pay for these personal charges.

Moreover, the tax court carefully considered Grossman's arguments that he lacked the requisite intent to defraud. Indeed, the care of the court's analysis is reflected in the fact that it refused to find that the Commissioner had met the requisite "heavy burden" for the 1983 and 1984 tax years.

On appeal, Grossman reiterates his arguments as to evidentiary insufficiency that were presented to and rejected by the tax court. For example, he contends that the relatively small amount of his underpayments demonstrates a lack of intent to defraud. The tax court, however, considered this and determined that Grossman's familiarity with the tax laws outweighed the fact that the constructive dividends constituted only a small percentage of Grossman's income.

Grossman also claims that he justifiably relied on the accountant that prepared his income tax returns. A taxpayer's reliance on his or her accountant to prepare accurate returns may indicate an absence of fraudulent intent. See Marinzulich v. Commissioner, 31 T.C. 487, 492 (1958). However, as the tax court noted, a taxpayer can only rely on an accountant when that "accountant has been supplied with all the information necessary to prepare the returns accurately." Foster v. Commissioner, 391 F.2d 727, 732 (4th Cir. 1968). Grossman did not supply his accountant with such information. Rather the accountant was hired only to prepare tax returns and not to audit the corporate books or otherwise analyze Grossman's travel expenses.

After careful review of the record, we can only conclude that overwhelming evidence supported the tax court's finding that Grossman

engaged in civil tax fraud in connection with his 1985 and 1986 income tax returns.

III.

Grossman next contends that he qualifies as an "innocent spouse" under the Internal Revenue Code. See I.R.C.§ 6015 (West Supp. 1998). Generally, when taxpayers file a joint income tax return, they are jointly and severally liable for the amount of tax or any deficiency due. See Shea v. Commissioner, 780 F.2d 561, 564 (6th Cir. 1986). The innocent spouse provision constitutes an exception to that general rule. Congress enacted this provision to prevent hardships that resulted when one spouse did not report income, thereby leaving the "innocent spouse" to pay the deficiency. Id. If a spouse succeeds in proving his or her eligibility for treatment under the innocent spouse provision, that spouse is liable for a deficiency on the joint return only to the extent that items giving rise to the deficiency are allocable to that spouse. See I.R.C. § 6015(d); S. Rep. No. 105-174, at 56 (1998). Items are then allocated between the spouses, typically in the same manner as if the spouses had filed separate returns. See id.

Before the tax court, Grossman asserted that he was eligible for relief with respect to his and Betsy's 1986 joint tax return under the innocent spouse provision in § 6013(e). See I.R.C. § 6013(e) (West 1989) (repealed 1998). In 1998, Congress passed the Internal Revenue Restructuring and Reform Act (IRRRA) of 1998, Pub. L. No. 105-206, 112 Stat. 685 (1998). That legislation repealed § 6013(e), see IRRRA § 3201(e)(1), and enacted a new, and in some respects more generous, innocent spouse provision, which is now codified at § 6015 of the Code. See IRRRA § 3201(a); I.R.C. § 6015. For example, while the old law only provided innocent spouses relief from understatements stemming from "grossly erroneous items," the new provision extends this relief to liability for understatements stemming from merely "erroneous" items. See I.R.C. § 6015(b)(1)(B). On appeal, Grossman contends that he is eligible for innocent spouse relief under this new law.

Initially, we note that whether the new statute controls here is by no means clear. The 1998 legislation applies to tax liability unpaid as of July 22, 1998. See IRRRA § 3201(g). The taxpayer, of course, car-

5

ries the burden of proving that he falls within the terms of any innocent spouse provision. See Ratana v. Commissioner, 662 F.2d 220, 224 (4th Cir. 1981). At oral argument, Grossman's counsel equivocally stated that "[t]here are small balances left outstanding, I believe, on all of the years at issue and, I believe, that these balances were kept unpaid in order not to moot any of the issues in the case." No other evidence in the record establishes that any tax liability remained as of July 22, 1998. Thus, it is questionable whether Grossman has carried his burden of demonstrating that the new innocent spouse provisions govern his case. Assuming, however, that the new provisions do apply, Grossman can obtain no more benefit from them then he could under the prior law.

In order to qualify for relief under the old law, a putative innocent spouse had to demonstrate inter alia that when he signed the tax return he "did not know, and had no reason to know" of the tax understatement. I.R.C. § 6013(e)(1)(C). The tax court found that Grossman had not met this requirement because when he signed the 1986 return, he "knew and intended that Betsy had constructive dividend income that was omitted from [his] and Betsy's 1986 joint tax return." Pursuant to § 6015(b) of the new statute (the general provision applicable to all joint filers), the person claiming to be an innocent spouse must still demonstrate that he or she "did not know, and had no reason to know" of an understatement. Id. § 6015(b)(1)(C). The tax court's specific finding interpreting precisely the same language under the old statute precludes Grossman from gaining any relief under the new § 6015(b) for the 1986 tax year.

Grossman concedes as much, but nonetheless claims entitlement to innocent spouse relief for the 1986 and 1985 tax years under another provision of the new law, which establishes a special rule for taxpayers not married at the time they elected innocent spouse treatment. See id. § 6015(c).

In order to obtain the benefit of that provision,§ 6015(c), an individual must demonstrate inter alia that he had no "actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency." Id. § 6015(c)(3)(C). As Grossman notes, unlike prior law, this new provision only excludes from innocent spouse protection taxpayers who have "actual knowledge" of underpayments. See

6

S. Rep. No. 105-174, at 59 (liability may not be"inferred based on indications that the electing spouse had a reason to know"). Consequently, Grossman argues that the tax court's conclusion that he was ineligible for relief under the old law does not preclude him from eligibility under the newly enacted § 6015(c).

The tax court, however, did not hold Grossman ineligible for innocent spouse relief under the prior law because he had "reason to know" of the fraud. Rather the court held that the prior law did not provide Grossman with any innocent spouse relief because he "<u>knew and intended</u> that Betsy had constructive dividend income that was omitted from petitioner's and Betsy's 1986 joint tax return." (emphasis added). Thus the court plainly did find that Grossman had actual knowledge of the underpayments. In making this finding, the tax court explicitly referred to its determination with respect to fraudulent intent, that Grossman "intended to evade his income taxes for each of the years 1985 and 1986, which taxes petitioner knew or believed he owed." As we noted in Part II of this opinion, a finding of tax fraud requires intentional and knowing conduct by the taxpayer. Thus, a taxpayer found liable for tax fraud by definition has actual knowledge of the underpayments. Accordingly, the tax court's amply supported finding that Grossman intended to defraud necessarily also constitutes a finding that Grossman had actual knowledge of the underpayment. For this reason, Grossman is ineligible for relief under § 6015(c).

With respect to the 1985 tax year, Grossman argues that since the tax court did not directly decide whether innocent spouse relief could apply for that year, he is entitled to such relief. Why the tax court did not address this question in its otherwise long and extremely thorough opinion is unclear. It may be because Grossman did not assert any right to innocent spouse relief for the 1985 tax year before the tax court. The Commissioner, however, does not so contend and, in the absence of any evidence in the record on this question (the briefs in the tax court are not contained in the record), we will assume Grossman did preserve this argument for appellate review. The argument, in any event, is foreclosed for the same reason that Grossman is ineligible for innocent spouse relief in connection with the 1986 return. Because the tax court found, on the basis of clearly sufficient evidence, that the Commissioner proved Grossman to be liable for tax fraud on his 1985 (as well as his 1986) return, we can only conclude

7

that Grossman had actual knowledge of underpayments for that year and, therefore, that he is ineligible for relief under § 6015(c).

We note that another provision of the new statute could also prevent Grossman from obtaining innocent spouse relief for either 1985 or 1986. That provision states that the Secretary of the Treasury "may provide for an allocation of any item" between spouses "if the Secretary establishes that such allocation is appropriate due to fraud of one or both individuals." I.R.C. § 6015(d)(3)(C). Thus, if the Secretary establishes that it is appropriate, due to Grossman's fraud, to allocate the entire deficiency to Grossman, the Secretary would have the power to make such an allocation and to thereby prevent Grossman from taking advantage of the innocent spouse provision. Notwithstanding Grossman's contentions to the contrary, nothing in the statute's legislative history suggests that § 6015(d)(3)(C) could not be applied here. See S. Rep. No. 105-174, at 55-56 (expressing concern that "taxpayers not be allowed to abuse these rules by knowingly signing false returns" and noting that "[i]n cases where the IRS proves fraud, the IRS may distribute, apportion, or allocate any item between spouses").

For all of these reasons, Grossman is ineligible for innocent spouse relief under the new statute, just as he was under prior law.

IV.

Finally, Grossman argues for the first time on appeal that certain tax credits owed to him negate any underpayment for the 1985 and 1986 tax years. There is nothing in the Code, see generally I.R.C. §§ 6663, 6211, and Grossman cites no authority supporting the proposition that credits from one year may be used to offset underpayments in a subsequent year. Cf. Trompeter v. Commissioner, 111 T.C. No. 2 (1998) (holding that credits for net operating losses may not reduce an underpayment in a previous year). However, we need not reach this question because Grossman failed to preserve it for appellate review. Generally, we will not consider an issue raised for the first time on appeal, see Muth v. United States, 1 F.3d 246 (4th Cir. 1993), and Grossman has not suggested any reason why we should depart from our ordinary rule in this case. We therefore decline to do so.

8

V.

For the foregoing reasons, the judgment of the tax court is

AFFIRMED.

9