T.C. Memo. 1999-227


UNITED STATES TAX COURT


ROBERT L. BOEHM AND WINONA J. MOWREY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

CRESTMARK MORTGAGE SERVICES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 14355-97, 14356-97.    Filed July 12, 1999.


<u>Allen R. Weed</u>, for petitioners.

<u>Alvin A. Ohm</u>, for respondent.


MEMORANDUM OPINION

THORNTON, <u>Judge</u>:  These cases were consolidated for trial, briefing, and opinion.

Pursuant to separate notices of deficiency, respondent determined the following deficiencies, penalties, and additions to tax:

Robert L. Boehm and Winona J. Mowrey
Docket No. 14355-97

| Taxable Year Ended | Deficiency | Penalty Sec. 6662 |
|---|---|---|
| December 31, 1993 | $30,974 | $6,195 |

Crestmark Mortgage Services, Inc.
Docket No. 14356-97

| Taxable Year Ended | Deficiency | Addition to Tax Sec. 6651 |
|---|---|---|
| July 31, 1994 | $8,781 | $2,195 |

After concessions, the issues for decision are: (1) Whether petitioners Robert L. Boehm and Winona J. Mowrey (the individual petitioners) are entitled to a deduction of $103,056 for a "Real Estate & Mortgage Rate Market Fee" claimed on their Schedule A for taxable year 1993; (2) whether the individual petitioners are liable for section 6662(a) accuracy-related penalties; and (3) whether petitioner Crestmark Mortgage Services, Inc. (Crestmark) is entitled to a deduction for business expenses claimed on its corporate income tax return for the year ended July 31, 1994.[1]

---

[1] Respondent determined that Crestmark should have included in taxable income interest imputed under sec. 7872 on the unpaid balance of certain loans that Crestmark made to petitioners. Respondent also asserted an addition to tax against Crestmark for failure to file a timely return. Petitioners failed to present any evidence with regard to these issues at trial. On opening brief, petitioners listed both issues but failed to argue them. Respondent dealt with both issues in his brief in answer. Petitioners did not address either issue in their brief in reply. We treat petitioners' failure to argue as, in effect, a concession of these issues. See Rule 151(e)(4) and (5); Sundstrand Corp. & Subs., Inc. v. Commissioner, 96 T.C. 226, 344

(continued...)

Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The parties have stipulated some of the facts, which are so found. The stipulated facts and the accompanying exhibits are incorporated herein by this reference. When they filed their petition, the individual petitioners were married and resided in Dallas, Texas.

Crestmark is a corporation formed under the State laws of Texas. When it filed its petition, Crestmark's principal office was located in Dallas, Texas.

Since 1976, Winona Mowrey (Mowrey) has been employed in the mortgage banking business as a loan officer. During the year in issue, Mowrey was employed as loan officer and manager of a branch office of Fort Worth Mortgage Corp. and Colonial Savings, F.A. (Fort Worth Mortgage), and reported wage income of

---

[1](...continued)
(1991); Money v. Commissioner, 89 T.C. 46, 48 (1987); Grossman v. Commissioner, T.C. Memo. 1996-452, supplemented by T.C. Memo. 1997-451, affd. __ F.3d __ (4th Cir., June 28, 1999). On brief, respondent indicates that because of a miscalculation, the amount of imputed interest income was overstated in the notice of deficiency. We expect respondent to give Crestmark the benefit of the revised computation in the Rule 155 computation, and in accordance with representations in respondent's trial memorandum and opening statements at trial, to make appropriate adjustments to Crestmark's taxable income with respect to the income reassigned from Crestmark to the individual petitioners.

$1,231,786. She supervised more than 30 employees. In addition to her managerial duties, she originated loans, made accounting for income produced by the loans, and prepared budget projections for the branch office. The income she received from Fort Worth Mortgage was determined at least in part by the profitability of her branch office. To increase the profitability of her branch office and thereby increase her income, Mowrey would arbitrage loans originated in her branch office to take advantage of interest rate fluctuations in the secondary mortgage market.

Robert Boehm (Boehm) was also employed in the mortgage banking business as a loan officer. During the year in issue, he was employed by NationsBank of Texas and reported wage income of $43,518. In addition, Boehm assisted Mowrey in her employment. Each month, he helped her audit loan files to determine how much income was being produced and to compare it against the projected budget for the branch office. Occasionally, Boehm picked up packages for Mowrey and took photographs for the use of appraisers. He also "kept up with" daily mortgage interest rates and would advise Mowrey on whether or not to sell loans in the secondary mortgage market.

During the year in issue, Boehm was president and sole officer, shareholder, director, and employee of Crestmark. Crestmark came into existence on December 1, 1989, as the result of a name change of a predecessor corporation, identified in the record only as JAWIN. Boehm testified that JAWIN "was previously

owned, though it never did any business, by * * * [Mowrey's] father." Crestmark has never had any office outside the individual petitioners' personal residence, nor a telephone number other than the individual petitioners'.

On November 17, 1993, Boehm deposited $102,955 into an account established in the name of Crestmark at NationsBank of Texas. Prior to this deposit, the account had a balance of $34.65. This was the only account in the name of Crestmark during 1993. The November 1993 deposit was the only money received by Crestmark during its fiscal year ended July 31, 1994.

Petitioners allege that the $102,955 deposited into Crestmark's account represented payment for services performed for Mowrey by Boehm, in his capacity as sole employee of Crestmark. No written contract existed between Crestmark and Mowrey. Neither Boehm nor Crestmark at any time provided Mowrey with any documents or records stating what services were performed, the date or time any services were performed, or who performed any services.

On their Schedule A attached to their 1993 joint Federal income tax return, petitioners claimed a deduction of $103,056[2]

---

[2] The record contains no explanation of the apparent discrepancy between the $102,955 November 1993 deposit, and the $103,056 that petitioners have claimed as a deduction.

for a "Real Estate & Mortgage Rate Market Fee" paid to Crestmark. Respondent disallowed the deduction in its entirety.

On June 23, 1995, Crestmark untimely filed its Short-Form Income Tax Return for its fiscal year ending July 31, 1994.  On its late-filed return, Crestmark reported the November 1993 deposit of $102,955 as its sole gross receipts for the year.  It reported no compensation of officers, no salaries, and no wages. On its return, Crestmark deducted $9,509 in business expenses for the year.  The claimed expenses consisted of $2,600 for taxes and licenses, $1,267 for interest, $2,286 for depreciation and $3,356 for other deductions that included sums paid for meals, petitioners' country club dues, and improvements to petitioners' residence at Lake Kiowa, Texas, such as a room addition, garage, and landscaping.  Respondent disallowed the claimed business deductions in their entirety.

## Discussion

### Petitioners' Deduction for Amounts "Paid" to Crestmark

Section 162(a)(1) allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including "a reasonable allowance for salaries or other compensation for personal services actually rendered."  The test of deductibility for compensation payments is "whether they are reasonable and are in fact payments purely for services."  Sec. 1.162-7(a), Income Tax

Regs.  Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any deductions claimed.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Respondent disallowed petitioners' claimed deduction for the $102,995 deposited by Boehm to Crestmark's account on grounds that petitioners have failed to establish that services were ever performed by Crestmark.  Respondent argues that the arrangement with Crestmark was a sham intended to divert wage income to their wholly owned corporation.[3]  Petitioners counter that "The record has ample evidence to support the finding that the services were in fact performed by Mr. Boehm in his capacity as an officer of Crestmark."

Petitioners have failed to establish that the amounts ostensibly paid to Crestmark were reasonable or purely for services that Boehm provided.  Apart from petitioners' self-serving testimony, the only evidence that petitioners have produced to support the claimed deduction is a single unsigned and undated document, captioned "Invoice", that states in its

_____

[3] Respondent has not raised, and therefore we do not consider, any issue as to whether the amounts paid to Crestmark represented ordinary and necessary expenses of carrying on Mowrey's business as a commission-basis employee for Forth Worth Mortgage.

entirety, "Winona J. Mowrey, FOR SERVICES RENDERED FOR YEAR ENDED 1993   $102,955.33". The document bears no letterhead and contains no reference to Crestmark. This purported invoice sheds little light on what services the $102,955 deposit compensated.

The record is devoid of any evidence to suggest that the fees purportedly paid to Crestmark were the result of arm's-length bargaining. There was no contract between the individual petitioners or between Mowrey and Crestmark spelling out the nature and terms of services to be provided by Boehm. The individual petitioners' testimony on the method of compensation was vague and inconsistent. Mowrey testified that fees paid to Crestmark were based on a percentage of "less than 10 percent of total income", and that the amount varied "on budget preparation time and that type of thing". Boehm testified: "I charge whatever I want to."

Even assuming, arguendo, that the claimed deduction represented a reasonable allowance for services performed by Boehm, petitioners have not established that Boehm performed these services in his capacity as an employee of Crestmark, rather than in his own capacity. This consideration implicates the "first principle of income taxation: that income must be taxed to him who earns it." Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949) (citing Lucas v. Earl, 281 U.S. 111 (1930)).

Generally, a corporation constitutes a separate taxable entity and will not be ignored for Federal income tax purposes if

it is created for business purposes or actually conducts business after incorporation. See <u>Moline Properties, Inc. v. Commissioner</u>, 319 U.S. 436 (1943). Where a corporation relies upon personal services of an employee to produce income, the question arises whether it is the employee or the corporation that is actually conducting the business. The relevant test is who controls the earning of the income. See <u>Haag v. Commissioner</u>, 88 T.C. 604, 610-611 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988); <u>Johnson v. Commissioner</u>, 78 T.C. 882, 890 (1982), affd. without published opinion 734 F.2d 20 (9th Cir. 1984); <u>Vercio v. Commissioner</u>, 73 T.C. 1246, 1254-1255 (1980). In <u>Johnson v. Commissioner</u>, <u>supra</u>, this Court articulated two requirements that must be met before a corporation, rather than its service-performer employee, will be considered the controller of income and therefore taxable on it:

> First, the service-performer employee must be just that--an employee of the corporation whom the corporation has the right to direct or control in some meaningful sense. Second, there must exist between the corporation and the person or entity using the services a contract or similar indicium recognizing the corporation's controlling position. [<u>Johnson v. Commissioner</u>, <u>supra</u> at 891; citations omitted.[4]]

---

[4] In cases involving members of religious orders obligated to turn over outside income to the order, some courts have rejected the two-part test used in <u>Johnson v. Commissioner</u>, 78 T.C. 882 (1982), in favor of a flexible facts and circumstances approach. See <u>Kircher v. United States</u>, 872 F.2d 1014 (Fed. Cir. 1989); <u>Schuster v. United States</u>, 800 F.2d 672 (7th Cir. 1986);

(continued...)

Petitioners fail both requirements of this test. First, there is no evidence that Crestmark directed or controlled Boehm in any meaningful sense. To the contrary, it is obvious that Crestmark was Boehm's alter ego, with no employees other than Boehm and no office other than petitioners' personal residence. There is no evidence that during the year at issue, Crestmark had any activity apart from receiving funds from and disbursing funds on behalf of the individual petitioners.

Second, there is no evidence of the existence between Mowrey and Crestmark of any contract or similar indicium recognizing Crestmark's controlling position with regard to Boehm. Accordingly, we conclude that Boehm, rather than Crestmark, actually controlled the earning of the amounts allegedly paid to Crestmark with respect to Boehm's services.

Because petitioners have filed a joint income tax return, their tax is computed on their aggregate income. See sec.

---

[4](...continued)
Fogarty v. United States, 780 F.2d 1005 (Fed. Cir. 1986). We need not reconcile any differences in the legal tests, as we would reach the same result under either test. See Haeri v. Commissioner, T.C. Memo. 1989-20.

In the context of determining the identity of a taxpayer's employer, this Court has also held that it is necessary to examine all the facts and circumstances, distinguishing cases such as Johnson that--like the instant case--involve the issue of whether compensation paid by the recipient of personal services is income to the individual workers or their personal service corporations. See Leavell v. Commissioner, 104 T.C. 140, 148-155 (1995).

6013(d)(3). Both allowable deductions and taxable income are determined on an aggregate basis. See sec. 1.6013-4(b), Income Tax Regs. Where a joint income tax return is filed, "it is treated as the return of a taxable unit and the net income disclosed by the return is subject to [tax] * * * as though the return were that of a single individual." Helvering v. Janney, 311 U.S. 189, 192 (1940) (quoting Sol. Op. 90 (1921), 4 C.B. 236). The amounts "paid" by Mowrey to Boehm have not left petitioners' taxable unit, and accordingly no deduction is allowable.

Mowrey testified that petitioners had "a prenuptial agreement that says that all of our income would be sole and separate." Using this testimony as their springboard, petitioners argue on brief that respondent's sham theory is therefore inapplicable. Petitioners have introduced no prenuptial agreement into evidence. Whether or not there is a prenuptial agreement, however, is immaterial. Having filed a joint income tax return, petitioners must aggregate their income, prenuptial agreement or no.

We sustain respondent's determination on this issue.

Section 6662 Penalty

Section 6662(a) imposes a penalty equal to 20 percent of the portion of an underpayment of taxes attributable to negligence or disregard of rules or regulations. Negligence includes any

failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under like circumstances. See, e.g., Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989); Neely v. Commissioner, 85 T.C. 934, 947 (1985).

No penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was a reasonable cause and that the taxpayer acted in good faith. See sec. 6664(c). The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the facts and circumstances of each particular case. See sec. 1.6664-4(b)(1), Income Tax Regs. The burden of proof is upon the taxpayer. See Rule 142(a).

The individual petitioners have not established that their underpayment was due to reasonable cause or that they acted in good faith. To the contrary, the record is clear that petitioners engaged in a scheme to divert substantial sums of their wage income to Crestmark, which then claimed business expenses for their personal living expenses, such as home improvements, country club dues, and meals.

On brief, the individual petitioners argue that they should not be liable for the negligence penalty because "the Commissioner at least impliedly approved a similar deduction on their 1990 individual income tax return." The record does not establish that respondent either implicitly or expressly approved a similar deduction in 1990. The only pertinent evidence apart from Mowrey's vague and self-serving testimony[5] is respondent's no-change letter from 1990 and a revenue agent's report which indicates that the only items questioned in the 1990 audit were a charitable contribution deduction and a deduction for investment expenses. There is no evidence that the revenue agent was even aware of, much less approved, petitioners' diversion of income to Crestmark.

In support of their position, the individual petitioners cite <u>Matthews v. Commissioner</u>, 92 T.C. 351 (1989), affd. 907 F.2d

---

[5] On direct examination, Mowrey testified as follows:

> Q. Did you pay Crestmark that year, 1990, for the same type of services that you later paid them in 1993?
>
> A. Yes, sir.
>
> Q. In the audit, do you know what the outcome of the audit was?
>
> A. Well, I don't know all these fancy words that he was talking about, but the bottom line is, to me, was the IRS said, you know, This is not a problem; this is fine, you know.

1173 (D.C. Cir. 1990), and Brown v. Commissioner, T.C. Memo. 1989-89, affd. without published opinion 916 F.2d 710 (4th Cir. 1990).  These cases are distinguishable.  Unlike the taxpayers in Matthews, petitioners have taken a position that is untenable and have failed to establish that they made full disclosure of their position to respondent.  Unlike Brown, this is not a case where respondent failed to act over a period of years when fully informed of the facts.

We sustain respondent's determination on this issue.

Crestmark's Claimed Business Deductions

Respondent disallowed Crestmark's claimed business expenses on the grounds that it had failed to establish that these were ordinary and necessary business expenses and that they were expended for the purpose designated.  With respect to the meals and entertainment expenses, respondent also determined that Crestmark failed to meet the substantiation requirements of section 274.

On brief, Crestmark concedes that the meals and entertainment deductions have not been substantiated.  We conclude that Crestmark has also failed to establish the validity of its other claimed deductions.

Section 162 generally allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  The determination of whether an expenditure satisfies the

requirements of section 162 is a question of fact.  See
Commissioner v. Heininger, 320 U.S. 467, 475 (1943).

Because petitioners have failed to establish that Crestmark
carried on any trade or business during the year at issue, a
fortiori the amounts claimed as deductions do not constitute
ordinary and necessary costs of carrying on a trade or business,
and thus are not deductible under section 162.  Even if we were
to assume, arguendo, that Crestmark was carrying on a trade or
business, it has not met its burden of proof with respect to
these deductions.  It presented no canceled checks, receipts, or
other evidence establishing that any claimed business expenses
were ever paid, the amount of the payments, or any other evidence
that any part of the claimed expenses were paid for the purposes
designated.  The only witness to testify about the claimed
deductions was Boehm.  His testimony was vague, conclusory, and
self-serving, and we are not required to accept it.  See
Niedringhaus v. Commissioner, 99 T.C. 202, 219 (1992).
Consequently, we uphold respondent's disallowance of Crestmark's
deductions.

To reflect the foregoing and concessions by the parties,

Decisions will be entered
under Rule 155.