T.C. Summary Opinion 2005-135

UNITED STATES TAX COURT

TRACIE YOUNG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6276-04S.                Filed September 14, 2005.

Tracie Young, pro se.

<u>James R. Rich</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case arises from a request for relief under section 6015 with respect to petitioner's 1995 taxable year. Respondent determined that petitioner was not entitled to any relief under section 6015. Petitioner timely filed a petition under section 6015(e)(1) seeking review of respondent's determination.

The issue for decision is whether respondent's denial of petitioner's request for relief pursuant to section 6015 was an abuse of discretion.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Greenville, North Carolina, on the date the petition was filed in this case.

Petitioner and her former spouse, John E. Glaze, Jr. (Mr. Glaze), were married in 1993. Mr. Glaze was employed as a truck driver who was on the road for long periods of time. For the taxable year 1995, Mr. Glaze received wage income from Melton Truck Lines and Mayflower Transit, Inc. (Mayflower) of $12,666.01 and $36,400, respectively.

During 1995, petitioner was employed as a nurse by Scottish Rite Children's Medical Center (Scottish Rite). Petitioner received wages from Scottish Rite for taxable year 1995 of $14,715.16.

During 1995, petitioner and Mr. Glaze maintained a joint checking account. Both petitioner and Mr. Glaze deposited their respective income into the joint checking account. Petitioner occasionally reviewed the bank statements regarding their joint checking account and used the joint checking account to pay joint household expenses.

Petitioner knew that Mr. Glaze drove a truck for Mayflower and knew he was receiving wage income from Mayflower. Also, during 1995, petitioner received gifts from Mr. Glaze, one of which was $500 that she used as a downpayment for the purchase of a 1984 Toyota Corolla.

On October 18, 1996, petitioner and Mr. Glaze delinquently filed their 1995 joint Federal income tax return. On their Form 1040, U.S. Individual Income Tax Return, petitioner and Mr. Glaze reported wage income of $27,382.[1] Petitioner and Mr. Glaze also reported $35,831 in unreimbursed employee business expenses on their 1995 joint income tax return. However, petitioner and Mr. Glaze failed to report: (1) $36,400 of wage income received by Mr. Glaze from Mayflower; and (2) $24 of interest income received jointly by petitioner and Mr. Glaze from the U.S. Treasury.

Petitioner and Mr. Glaze's 1995 joint income tax return reported a refund due of $2,265. Petitioner and Mr. Glaze

[1]This amount consists of petitioner's wage income received from Scottish Rite and Mr. Glaze's wage income received from Melton Truck Lines, rounded to the nearest dollar.

received the refund in full, and petitioner used the moneys from the refund to pay joint household liabilities.

Petitioner and Mr. Glaze's 1995 joint income tax return was prepared by Jackson Hewitt Tax Service. Petitioner "took all the information from my [petitioner's] tax return from Scottish Rite Hospital, and the information that he [Mr. Glaze] had given me from his tax returns" to the Jackson Hewitt Tax Service Center. Petitioner reviewed the 1995 joint income tax return before filing it with the Internal Revenue Service. Both petitioner and Mr. Glaze voluntarily signed their 1995 joint income tax return.

On November 21, 1997, respondent issued petitioner and Mr. Glaze a notice of deficiency for taxable year 1995, in which respondent determined that they had unreported income of $36,424 and were liable for an income tax deficiency of $8,237, an addition to tax pursuant to section 6651(a)(1) of $1,493, and an accuracy-related penalty pursuant to section 6662 of $1,647. Neither petitioner nor Mr. Glaze filed a petition with this Court with respect to the notice of deficiency. Accordingly, on or about April 6, 1998, respondent assessed the tax liability, addition to tax, and the accuracy-related penalty that were reflected in the notice of deficiency for taxable year 1995.

Petitioner and Mr. Glaze were divorced on May 26, 1999, by a divorce decree entered by the Circuit Court of Shelby County, Tennessee. The divorce decree refers to a "written Marital

Dissolution Agreement" which provides for a settlement of property rights of the parties. Petitioner has not provided respondent, respondent's counsel, or this Court with a copy of the aforesaid agreement.

On or about April 1, 2002, respondent applied petitioner's 2001 Federal income tax refund of $2,434 toward petitioner and Mr. Glaze's 1995 income tax liability.

On June 3, 2002, petitioner filed a Form 8857, Request for Innocent Spouse Relief, with respondent, requesting innocent spouse relief with respect to the 1995 taxable year. On February 25, 2003, respondent issued petitioner a letter advising her of the preliminary determination denying relief from liability on the 1995 joint return. On March 29, 2004, respondent sent petitioner a letter advising her of the final determination denying her relief from liability for the deficiency, addition to tax, and penalty for the 1995 taxable year. On April 12, 2004, petitioner filed a petition with this Court for review of respondent's determination denying her request for relief from joint and several liability with respect to the 1995 tax year.

## Discussion

In general, taxpayers filing a joint Federal income tax return are each responsible for the accuracy of their return and are jointly and severally liable for the entire tax liability due for that year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C.

276, 282 (2000). In certain circumstances, however, a spouse may obtain relief from joint and several liability by satisfying the requirements of section 6015.

Section 6015 applies to tax liabilities arising after July 22, 1998, and to tax liabilities arising on or before July 22, 1998, that remain unpaid as of such date. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(g), 112 Stat. 740. In the present case, petitioner and Mr. Glaze's tax liabilities arose during taxable year 1995. However, these liabilities remained unpaid as of July 22, 1998; therefore, section 6015 applies to the case at bar. See Washington v. Commissioner, 120 T.C. 137, 155 (2003).

Section 6015(a)(1) provides that a spouse who has made a joint return may elect to seek relief from joint and several liability under section 6015(b) (dealing with relief from liability for an understatement of tax on a joint return). Section 6015(a)(2) provides that a spouse who is eligible to do so may elect to limit that spouse's liability for any deficiency with respect to a joint return under section 6015(c). Relief from joint and several liability under section 6015(b) or (c) is available only with respect to a deficiency for the year for which relief is sought. Sec. 6015(b)(1)(D) and (c)(1); see H. Conf. Rept. 105-599, at 252-254 (1998), 1998-3 C.B. 747, 1006-1008. If relief is not available under either section 6015(b) or

(c), an individual may seek equitable relief under section 6015(f), which may be granted by the Commissioner in his discretion.

In this case, petitioner contends that she is entitled to full relief from liability under section 6015.[2]  Our jurisdiction to review petitioner's request for relief is conferred by section 6015(e), which allows a spouse who has requested relief from joint and several liability to contest the Commissioner's denial of relief by filing a timely petition in this Court.  We address petitioner's request for relief under subsections (b), (c), and (f) of section 6015 in turn.

A.  Section 6015(b)

Section 6015(b)(1) authorizes the Commissioner to grant relief from joint and several liability if the taxpayer satisfies each requirement of subparagraphs (A) through (E).  Section 6015(b)(1) provides:

---

[2]Presumably, petitioner's claim for relief includes a refund of her 2001 overpayment of $2,434 which the Commissioner applied toward petitioner and Mr. Glaze's 1995 income tax liability. Sec. 6015(g) governs the allowance of credits and refunds in cases where the taxpayer is granted relief under sec. 6015. Except as provided otherwise in sec. 6015(g) and in secs. 6511, 6512(b), 7121, and 7122, a credit or refund is allowed or made to the extent attributable to the application of sec. 6015.  Sec. 6015(g)(1).  A tax credit or refund is allowed only if petitioner qualifies for innocent spouse relief under sec. 6015(b) or if the Internal Revenue Service exercises its authority to provide equitable relief pursuant to sec. 6015(f).  No credit or refund is allowed where a taxpayer obtains relief after making a separate liability election.  See sec. 6015(g)(3).

SEC. 6015(b).  Procedures for Relief From Liability Applicable to All Joint Filers.--

(1) In general.--Under procedures prescribed by the Secretary, if--

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

The requirements of section 6015(b)(1) are stated in the conjunctive.  Therefore, if the requesting spouse fails to meet any one of them, she does not qualify for relief.  Alt v. Commissioner, 119 T.C. 306, 313 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).  Except as provided by section 6015, the requesting spouse bears the burden of proving that she satisfies

each requirement of section 6015(b)(1).  See Rule 142(a).  We find that petitioner fails to meet the requirement of section 6015(b)(1)(C); therefore, we need not, and do not, decide whether petitioner satisfies the other requirements of section 6015(b)(1).

Pursuant to section 6015(b)(1)(C), petitioner must establish that she did not know and further had no reason to know of the understatement in tax on the joint return which she filed with her husband.  This Court has held that "where a spouse seeking relief has actual knowledge of the underlying transaction that produced the omitted income, innocent spouse relief is denied."  Cheshire v. Commissioner, 115 T.C. 183, 192-193 (2000), affd. 282 F.3d 326 (5th Cir. 2002).

In the present case, petitioner and Mr. Glaze maintained a joint checking account.  Both petitioner and Mr. Glaze deposited their respective wage income into said joint checking account. Petitioner occasionally reviewed the bank statements regarding their joint checking account, and she personally used moneys from the joint checking account to pay joint household expenses. Further, petitioner knew that Mr. Glaze drove trucks for Mayflower and knew he was receiving wages from Mayflower. Petitioner also reviewed the 1995 joint income tax return before filing it with the Internal Revenue Service.

Upon the basis of the facts of the present case, we find that petitioner was well aware of the income received by Mr. Glaze from Mayflower for his services, and that such income was not reported as gross income on their 1995 joint Federal income tax return. Therefore, we conclude that petitioner may not claim that she did not have knowledge of the income received by Mr. Glaze.

Further, petitioner had actual knowledge of the interest income received from the U.S. Treasury of $24, because such income was jointly received in the names of both petitioner and Mr. Glaze. Accordingly, we hold that petitioner is not entitled to relief under section 6015(b).

B. Section 6015(c)

Section 6015(c) grants relief from joint and several tax liability for electing individuals who filed a joint return and are no longer married, are legally separated, or are living apart. Generally, this type of relief treats spouses, for purposes of determining tax liability, as if separate returns had been filed. Sec. 6015(d)(3)(A); Grossman v. Commissioner, 182 F.3d 275, 278 (4th Cir. 1999), affg. T.C. Memo. 1996-452; Charlton v. Commissioner, 114 T.C. 333, 342 (2000); Rowe v. Commissioner, T.C. Memo. 2001-325. The allocation, however, is not permitted if the Secretary shows by a preponderance of the evidence that the electing individual had "actual knowledge, at

the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual". Sec. 6015(c)(3)(C); Culver v. Commissioner, 116 T.C. 189, 194-195 (2001); Cheshire v. Commissioner, supra at 193-194.

Respondent argues that petitioner had actual knowledge of the unreported income because: (1) She had access to the proceeds of Mr. Glaze's wage income from Mayflower in the joint checking account; (2) she occasionally reviewed the bank statements regarding their joint checking account; (3) she used moneys from Mr. Glaze's wage income to pay joint household expenses; and (4) the interest income received from the U.S. Treasury was received jointly by petitioner and Mr. Glaze.

In the present case, "the knowledge standard for purposes of section 6015(c)(3)(C) is an actual and clear awareness * * * of the existence of an item which gives rise to the deficiency". Cheshire v. Commissioner, supra at 195.

Petitioner is not entitled to relief from joint and several liability under section 6015(c). As discussed above, petitioner had actual knowledge of the $24 of interest income. Also, as discussed above, petitioner was fully aware of all the underlying factual circumstances concerning the wage income received by Mr. Glaze from Mayflower. See Cheshire v. Commissioner, supra. Consequently, petitioner had actual knowledge of the factual

basis for the unreported income, and she cannot rely on ignorance of the law for relief from liability.  Mitchell v. Commissioner, 292 F.3d 800, 805 (D.C. Cir. 2002), affg. T.C. Memo. 2000-332.

   C.  Section 6015(f)

Therefore, the only remaining opportunity for relief available to petitioner is section 6015(f).  Section 6015(f) provides as follows:

> SEC. 6015(f).  Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
>> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>>
>> (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2000-15, 2000-1 C.B. 447,[3] to be considered in determining whether an individual qualifies for relief under section 6015(f).  Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448, lists threshold conditions which must be

---

[3]This revenue procedure was superseded by Rev. Proc. 2003-61, 2003-2 C.B. 296.  Rev. Proc. 2003-61, 2003-2 C.B. 296, is effective either for requests for relief filed on or after Nov. 1, 2003, or for requests for which no preliminary determination letter was issued as of Nov. 1, 2003.  In the present case, the request for relief was filed on June 3, 2002, and the preliminary determination letter was issued on Feb. 25, 2003; therefore, Rev. Proc. 2000-15, 2000-1 C.B. 447 is applicable in the present situation.

satisfied before the Commissioner will consider a request for relief under section 6015(f).  Respondent concedes that petitioner meets these threshold conditions for equitable innocent spouse relief.

Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, lists nonexclusive factors that the Commissioner will consider in determining whether, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for all or part of the unpaid income tax liability or deficiency, and full or partial equitable relief under section 6015(f) should be granted.  Rev. Proc. 2000-15, sec. 4.03(1), provides that the following factors weigh in favor of the Commissioner's granting equitable relief:  (1) Marital status, (2) economic hardship, (3) abuse, (4) no knowledge or reason to know, (5) nonrequesting spouse's legal obligation, and (6) attributable to nonrequesting spouse.  Rev. Proc. 2000-15, sec. 4.03(2), 2000-1 C.B. at 449, provides that the following factors weigh against the Commissioner's granting equitable relief:  (1) Attributable to requesting spouse, (2) knowledge, or reason to know, (3) significant benefit, (4) lack of economic hardship, (5) noncompliance with Federal income tax laws, and (6) requesting spouse's legal obligation.  Further, Rev. Proc. 2000-15, supra, provides that no single factor will be determinative, but that

all relevant factors, regardless of whether the factor is listed in Rev. Proc. 2000-15, sec. 4.03, will be considered and weighed.

To prevail under section 6015(f), petitioner must show that respondent's denial of equitable relief from joint liability under section 6015(f) was an abuse of discretion. See Washington v. Commissioner, 120 T.C. at 146; Jonson v. Commissioner, 118 T.C. 106, 125 (2002) (citing Butler v. Commissioner, 114 T.C. at 292), affd. 353 F.3d 1181 (10th Cir. 2003). Action constitutes an abuse of discretion under this standard where it is arbitrary, capricious, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999). The question of whether respondent's determination was arbitrary, capricious, or without sound basis in fact is a question of fact. Cheshire v. Commissioner, 115 T.C. at 198. In deciding whether respondent's determination that petitioner is not entitled to relief under section 6015(f) was an abuse of discretion, we consider evidence relating to all the facts and circumstances.

Respondent contends: (1) Petitioner voluntarily signed the 1995 joint Federal income tax return which reported gross income of $27,382; (2) the proceeds of Mr. Glaze's wage income from Mayflower were put into a joint checking account to which petitioner had access; (3) petitioner obtained benefits due to Mr. Glaze's wage income received from Mayflower through the use of those moneys to pay off household expenses; (4) petitioner

would not suffer economic hardship if the Service did not grant relief from the income tax liability; (5) petitioner had actual knowledge that in 1995, Mr. Glaze worked for and received income from Mayflower; and (6) petitioner had actual knowledge of the $24 of interest income received jointly by petitioner and Mr. Glaze from the United States Treasury. Respondent asserts that these factors weigh against granting relief to petitioner. We now address each of the factors of Rev. Proc. 2000-15, sec. 4.03, separately.

1. Marital Status

During 1995, petitioner and Mr. Glaze were married and resided in the same household; however, Mr. Glaze was frequently away from home driving a truck for Melton Truck Lines and Mayflower. Petitioner and Mr. Glaze were divorced on May 26, 1999. This factor weighs in favor of granting relief to petitioner.

2. Economic Hardship

Respondent contends that petitioner offered no evidence that she would suffer economic hardship if relief were denied. Pursuant to section 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., economic hardship exists if a levy will cause a taxpayer to be unable to pay his/her reasonable basic living expenses. Respondent maintains that respondent's collection activity would

not leave petitioner unable to pay her basic living expenses.[4]  In addition, respondent asserts that petitioner provided no documentation to contradict these contentions or to demonstrate an economic hardship.

It appears from the record that petitioner earns sufficient income and has assets such that she would not experience economic

_____

[4]Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., provides:

> (ii) Information from taxpayer.  In determining a reasonable amount for basic living expenses the director will consider any information provided by the taxpayer including--
>
> > (A) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else;
> >
> > (B) The amount reasonably necessary for food, clothing, housing, (including utilities, home-owner insurance, home-owner dues, and the like), medical expenses (including health insurance), transportation, current tax payments (including federal, state, and local), alimony, child support, or other court-ordered payments, and expenses necessary to the taxpayer's production of income (such as dues for a trade union or professional organization, or child care payments which allow the taxpayer to be gainfully employed);
> >
> > (C) The cost of living in the geographic area in which the taxpayer resides;
> >
> > (D) The amount of property exempt from levy which is available to pay the taxpayer's expenses;
> >
> > (E) Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster; and
> >
> > (F) Any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director.

hardship if required to pay some or all of the tax deficiency. Petitioner has not entered into evidence any documentation or testimony to contradict the above claims or the determination of respondent; therefore, we find that petitioner will not suffer economic hardship if relief is not granted. This factor favors denying relief.

## 3. Abuse

There is no evidence in the record that petitioner was abused by Mr. Glaze. Spousal abuse is a factor listed in Rev. Proc. 2000-15, sec. 4.03(1), that will weigh in favor of equitable relief if found but will not weigh against equitable relief if not present in a case. Therefore, this factor is neutral.

## 4. Knowledge or Reason To Know

In the case of an income tax liability that arose from a deficiency, the fact that the requesting spouse did not know and had no reason to know of the item giving rise to the deficiency is a factor in favor of granting relief. Rev. Proc. 2000-15, sec. 4.03(1)(d). By contrast, the fact that the requesting spouse knew or had reason to know of the item giving rise to the deficiency is a factor weighing against relief. Rev. Proc. 2000-15, sec. 4.03(2)(b).

Petitioner contends that she did not know and had no reason to know that Mr. Glaze did not report his wage income received from Mayflower.

However, as previously stated, petitioner voluntarily signed the 1995 joint return and admitted that she did review the joint return before filing. Petitioner and Mr. Glaze maintained a joint checking account. Both petitioner and Mr. Glaze deposited their respective income into said joint checking account. Petitioner occasionally reviewed the bank statements regarding their joint checking account. Petitioner personally used moneys from the joint checking account to pay household expenses. Further, petitioner knew that Mr. Glaze drove a truck for Mayflower and knew he was receiving wage income from Mayflower. Also, the interest income from the U.S. Treasury was received in both petitioner's and Mr. Glaze's names. Thus, petitioner knew or had reason to know of the unreported income which gave rise to the taxable year 1995 deficiency, addition to tax pursuant to section 6651(a)(1), and the accuracy-related penalty pursuant to section 6662. This factor favors denying relief to petitioner.

5. Nonrequesting Spouse's Legal Obligation

As previously noted, petitioner and Mr. Glaze were divorced on May 26, 1999, and a divorce decree was entered by the Circuit Court of Shelby County, Tennessee. The divorce decree refers to a "written Marital Dissolution Agreement" which provides for a

settlement of property rights of the parties.  However, petitioner has not provided respondent's counsel or this Court with a copy of the aforesaid agreement.

Rev. Proc. 2000-15, sec. 4.03(1)(e), indicates that if Mr. Glaze had a legal obligation under the judgment for dissolution of marriage to pay the tax liabilities, then that fact would weigh in favor of granting relief to petitioner.  Likewise, if the judgment for dissolution of marriage had placed the obligation to pay the taxes on petitioner, then that fact would weigh against granting relief to her as indicated in Rev. Proc. 2000-15, sec. 4.03(2)(f).  In the present case, the divorce decree has not been offered into evidence.  Thus, this is a neutral factor.

6.   Attributable to Nonrequesting Spouse

As previously stated, $36,400 of petitioner's and Mr. Glaze's unreported income for taxable year 1995 is attributable to wages earned through Mr. Glaze's employment with Mayflower. The additional $24 of interest income was received by petitioner and Mr. Glaze in both their names and is therefore attributable to both petitioner and Mr. Glaze.  As to the $36,400 of petitioner's and Mr. Glaze's unreported income for taxable year 1995, this factor favors granting petitioner equitable relief.

## 7. Significant Benefit

Respondent contends that petitioner received benefits from the proceeds of Mr. Glaze's wage income received from Mayflower in the form of payment of joint household expenses.

Petitioner admitted at trial that she and Mr. Glaze were personally liable for the household expenses which were paid by the moneys received by Mr. Glaze as wage income from Mayflower. Petitioner also testified at trial that during 1995 she received gifts from Mr. Glaze, one of which was $500 that she used as a downpayment for the purchase of a 1984 Toyota Corolla. Therefore, we find that petitioner did benefit from the unreported wage income received by Mr. Glaze from Mayflower.

## 8. Noncompliance With Federal Income Tax Laws

There is no evidence in the record as to this factor. Therefore, we consider this factor neutral.

## 9. Conclusion

The factors that weigh against granting relief to petitioner outweigh those factors favoring relief. Therefore, under these facts and circumstances, we hold that respondent did not abuse his discretion in denying equitable relief to petitioner under section 6015(f).

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>for respondent</u>.