T.C. Memo. 2006-84

UNITED STATES TAX COURT

CHARLES McHAN AND MARTHA McHAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 550-92.                    Filed April 24, 2006.

Charles McHan, pro se.

<u>R. Walton Davis III</u>, for petitioner Martha McHan.

<u>Eric B. Jorgensen</u> and <u>Gwendolyn C. Walker</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Pursuant to section 7443A and Rules 180 and
183,[1] this case was assigned to and heard by Special Trial Judge

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code as amended and in effect for the years
in issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

Lewis R. Carluzzo. His recommended findings of fact and conclusions of law were filed and served upon the parties on July 7, 2005. Subsequently, the petitioners filed objections thereto, and petitioner Charles McHan moved for a new trial. Respondent filed no objection to the Special Trial Judge's recommended findings of fact and conclusions of law, but respondent did file a reply to petitioners' objections. Hereinafter, references to petitioner in the singular are to petitioner Charles McHan.

We are mindful that with regard to our review of Special Trial Judge Carluzzo's recommended findings of facts new Rule 183(d) provides:

> Due regard shall be given to the circumstance that the Special Trial Judge had the opportunity to evaluate the credibility of witnesses, and the findings of fact recommended by the Special Trial Judge shall be presumed to be correct.

We have given appropriate deference to the Special Trial Judge's recommended factual findings, and, after consideration of the evidence and the record in this case, we have made minor changes to his recommended findings and analysis. We also have made a number of editorial changes to the Special Trial Judge's recommended findings of fact and conclusions of law in an effort to clarify certain matters.

After consideration of the record herein, the briefs of the parties, petitioners' objections to the Special Trial Judge's recommended findings of fact and conclusions of law, and respondent's reply thereto, we conclude that the recommended findings of fact and conclusions of law of Special Trial Judge Carluzzo, which are hereinafter set forth as modified in a number of minor respects, should be adopted as the report of the Court.

In a notice of deficiency dated November 15, 1991, respondent determined deficiencies in and additions to the Federal income taxes of petitioner, as follows:

| | | Additions to Tax | | | | |
|---|---|---|---|---|---|---|
| Years | Deficiencies | Sec. 6653(b)(1) | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6653(b)(2) | Sec. 6661 |
| 1985 | $329,911 $82,478 | $164,956 | ---- | ---- | 50% of Int. due on $305,762 | |
| 1986 17,409 | 90,590 | ---- | $52,226 | 50% of Int. due on $69,635 | ---- | |

In a separate notice of deficiency, also dated November 15, 1991, respondent determined deficiencies of $329,911 and $90,590 in Martha McHan's respective 1985 and 1986 Federal income taxes, which deficiencies are based solely on Martha's alleged joint liability under section 6013 for the tax deficiencies determined against petitioner.

After settlement of some issues, the primary issues for decision are: (1) Whether petitioners on their 1985, 1986, and 1987 joint Federal income tax returns underreported petitioner's

income from the sale of marijuana; and (2) whether petitioner is liable for the additions to tax for fraud under section 6653(b).

Petitioners' 1987 income is also considered in this proceeding in order to determine the correct amount of a net operating loss carryback from 1987 to 1985 and 1986. See sec. 6214(b).

Also raised as an issue herein is whether petitioner Martha McHan is eligibile for relief from joint liability under section 6015. That issue has been severed from the issues tried and addressed in this opinion.

FINDINGS OF FACT

Petitioners were married in 1966 and remained so as of the date of trial. At the time the petition was filed in this case, petitioners were residents of Murphy, North Carolina.

Petitioner's Drug Trafficking Activities

In 1984 through 1988, petitioner participated in various transactions involving the illegal purchase and sale of marijuana. Generally, petitioner purchased the marijuana with cash from sources in Mexico and Belize and sold the marijuana in North Carolina for resale by others in Florida and other States. A number of individuals participated with petitioner in various aspects of the illegal drug transactions. We focus, as did

respondent, on specific transactions involving petitioner, Paul Thomas Posey (Posey), and Paul Leroy Cunningham (Cunningham).

In 1985, on a number of occasions, petitioner, accompanied by Posey, traveled to Lajitas, Texas (the Texas source), and purchased marijuana. On average, each purchase by petitioner from the Texas source consisted of 480 to 520 pounds of marijuana for which petitioner paid approximately $275 a pound. With respect to each purchase, petitioner also paid $10,000 to an individual identified as "the Colonel", who provided "security" and who helped transport the marijuana from Mexico to Lajitas, Texas.

After its purchase from the Texas source, generally the marijuana was transported to North Carolina by Posey and an associate. The marijuana would be divided between petitioner and Posey, and petitioner would sell his portion of the marijuana to Cunningham who, in turn, generally would resell the marijuana in Florida.

During 1986 and 1987, petitioner and Cunningham were involved in the purchase of marijuana in Florida and Texas and the resale of the marijuana in Florida (the Florida transactions). In connection with the 1986 and 1987 Florida transactions, petitioner lost $73,000 and $42,000, respectively.

In November 1987, as a result of his arrest for conspiracy to possess and to distribute marijuana, Posey agreed to cooperate

with law enforcement officials, to provide information about petitioner's drug trafficking activities, and to assist Government agents in gathering evidence against petitioner.

On March 31 and April 1, 1988, Posey secretly made tapes of conversations between himself and petitioner. The tapes of these conversations were turned over to Government agents investigating petitioner's drug trafficking activities.

In May 1988, petitioner, Cunningham, and several other individuals traveled to El Paso, Texas, to purchase marijuana. On May 3, 1988, after purchasing for $100,000 200 pounds of marijuana from an undercover Government agent, petitioner and Cunningham were arrested and charged under 21 U.S.C. section 846 (2000) with conspiring to possess with the intent to distribute 200 pounds of marijuana with regard to the May 1988 drug transaction.

Petitioner pleaded guilty to the above Federal criminal charge, and petitioner was sentenced to a prison term of 52 months and was fined $100,000. See United States v. McHan, 920 F.2d 244, 245 (4th Cir. 1990).

In connection with the above prosecution, under 21 U.S.C. section 853 the Government obtained an in rem criminal forfeiture of petitioner's interests in a 35-acre parcel of real estate and in two automobiles.

Cunningham also pleaded guilty to the above criminal charge. As part of his plea agreement, Cunningham testified against petitioner before a Federal grand jury regarding various illegal drug transactions in which he and petitioner participated in 1985, 1986, and 1987.

On September 13, 1990, in an additional indictment filed in the Federal District Court for the Western District of North Carolina, petitioner was charged with 17 counts of illegal drug trafficking, filing false tax returns, and engaging in a continuing criminal enterprise in connection with the illegal drug transactions that Cunningham had testified about and that occurred beginning in the fall of 1984, in 1985, 1986, and 1987, and in early 1988.

In July of 1992, petitioner pleaded guilty to some of the charges, and petitioner was convicted on all charges submitted to the jury.

Petitioner was sentenced to a prison term of 150 months.

Also, the Government obtained another criminal forfeiture against petitioner of $395,670 (the amount of the net proceeds that the District Court determined petitioner received from the related drug transactions, after deducting $857,030 for petitioner's estimated costs of purchasing and transporting the marijuana and after deducting $236,650 for one-half of the net

marijuana sales proceeds that petitioner purportedly shared with Posey).

On appeal, the United States Court of Appeals for the Fourth Circuit affirmed petitioner's above second conviction, but the Court of Appeals reversed the District Court as to the proper amount subject to criminal forfeiture and held that, under 21 U.S.C. section 853, the Government's criminal forfeiture against petitioner extended to the entire $1,489,350 gross proceeds that the District Court determined petitioner received from the illegal drug transactions and was not to be reduced by petitioner's costs nor by amounts shared with co-conspirators. United States v. McHan, 101 F.3d 1027, 1041-1042 (4th Cir. 1996).

As a result of petitioner's criminal convictions, petitioner has been incarcerated since 1989.

Petitioner Martha McHan is not implicated in petitioner's illegal drug transactions. With assets petitioners acquired over the years, petitioners apparently have fully satisfied both criminal forfeiture judgments.

For 1985, 1986, and 1987, petitioners' joint Federal income tax returns were prepared by a professional income tax return preparer based on information provided to him by petitioners and were signed by petitioners and filed with respondent. Thereon, the following adjusted gross income and loss figures for petitioners were reported:

| Year | Adjusted Gross Income or Loss |
|------|-------------------------------|
| 1985 | $122,352 |
| 1986 | $180,687 |
| 1987 | ($332,696) |

The above adjusted gross income and loss figures reported on petitioners' joint Federal income tax returns for 1985, 1986, and 1987 did not reflect any of the proceeds of petitioner's illegal drug transactions.

Petitioners did not provide any books and records or otherwise disclose to their tax return preparer any information relating to petitioner's drug transactions, and petitioners failed to provide to their tax return preparer and to respondent any books and records with respect to the illegal drug transactions in which petitioner participated.

Respondent's agent investigated petitioner for failing to report income from illegal drug transactions in 1985, 1986, and 1987. Respondent's agent and an agent of the North Carolina State Bureau of Investigation interviewed Posey and Cunningham regarding their participation with petitioner in the illegal drug transactions during the years in issue.

On the basis of his investigation and his interviews with Posey and Cunningham, respondent's agent determined the amounts petitioner received on the sales of marijuana in which petitioner and Posey and/or Cunningham were involved.

Also, based in part on the statements made by petitioner to Posey on the undercover tapes, respondent's agent determined how much petitioner received on the sales of marijuana purchased from the Texas source.

Respondent's agent used information from his investigation to reconstruct petitioner's 1985, 1986, and 1987 income from illegal drug transactions. Respondent's agent identified certain specific marijuana transactions in which petitioner, Posey, and Cunningham participated during 1985, 1986, and 1987.

With respect to each such marijuana transaction, respondent's agent determined the number of pounds of marijuana purchased, petitioner's cost for the marijuana, and the sales proceeds and gross profit petitioner received.

For example, respondent's agent determined that petitioner paid on average $275 per pound for the marijuana purchased from the Texas source. Also, to take into account amounts paid by petitioner to the Colonel on the purchase of marijuana from the Texas source, respondent's agent added $20 per pound, allowing petitioner a total cost of goods sold in the amount of $295 per pound. Where petitioner purchased marijuana from a different source, respondent's agent used a cost for the marijuana according to information provided by Posey and Cunningham.

In calculating petitioner's gross profits for 1986 and 1987 from illegal drug transactions in which petitioner participated,

respondent's agent disregarded petitioner's losses in 1986 and 1987 on the Florida transactions.

Respondent's agent prepared a schedule of omitted gross receipts (the schedule), which specifically identifies the marijuana sales petitioner participated in with Posey and Cunningham. For each of these transactions, respondent's special agent calculated: (1) Gross receipts (amount of marijuana purchased x sale price), (2) cost of marijuana sold (amount of marijuana purchased x purchase price), and (3) the gross profit (gross receipts minus cost of marijuana sold).

Respondent's agent's calculation of petitioner's gross receipts, cost of marijuana sold, and gross profit for each year (from the specific marijuana sales transactions in which petitioner participated) is summarized below:

| Petitioner's Marijuana Sales | | | |
|---|---|---|---|
| | 1985 | 1986 | 1987 |
| Gross Receipts | $1,311,670 | $252,800 | $266,400 |
| Cost of Goods Sold | 689,410 | 159,525 | 65,490 |
| Gross Profit | 622,260 | 93,275 | 200,910 |

On November 15, 1991, respondent mailed to petitioner and to Martha McHan a notice of deficiency for 1985 and 1986 based on the above-determined $622,260 and $93,275 in income (i.e., gross

profit) of petitioner from marijuana sales not reported on petitioners' 1985 and 1986 Federal income tax returns.[2]

In addition, based on his above calculation and determination that petitioner had $200,910 in additional unreported income in 1987 from marijuana sales, respondent disallowed the portions of petitioners's claimed 1987 $332,696 net operating loss carryback that were claimed on petitioners' 1985 and 1986 Federal income tax returns.

For 1985 and 1986, respondent also determined that petitioner was liable for additions to tax for fraud and for substantially understating his Federal income tax liability.

Certain other adjustments made by respondent against petitioners in each notice of deficiency are no longer in dispute.

At trial, respondent sought to significantly increase the illegal drug income to be charged to petitioner for each year.

As indicated, the tax deficiencies reflected in respondent's notice of deficiency to Martha Mchan were based solely on Martha's alleged joint liability under section 6013 for the tax deficiencies determined against petitioner, and no fraud or other additions to tax were determined against Martha.

_____

[2] Respondent's calculations of petitioner's income from the sale of marijuana were also used by the District Court in the second criminal forfeiture action against petitioner.

OPINION

According to petitioners, the determinations made in respondent's notices of deficiency are arbitrary and erroneous and therefore are not entitled to the normal presumption of correctness provided in our Rules and by the caselaw. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Where a taxpayer establishes that a deficiency determination is arbitrary, capricious, or without reasonable foundation, the normal presumption of correctness attached thereto may not be applicable. Helvering v. Taylor, 293 U.S. 507 (1935); Dellacroce v. Commissioner, 83 T.C. 269, 287 (1984); Riland v. Commissioner, 79 T.C. 185, 201 (1982); Jackson v. Commissioner, 73 T.C. 394, 401 (1979).

Petitioners maintain that petitioner did not realize any income during the years in issue from the marijuana transactions identified by respondent's agent. Throughout the proceedings and in their briefs, petitioners argue that petitioner was acting as a mere conduit or agent for the other co-conspirators and that petitioner did not have ownership in the funds or profits relating to the marijuana transactions. Further, petitioners claim that respondent has failed to produce any predicate evidence to establish that petitioner received income from illegal drug sales.

We recognize the difficulty of proving a negative, that is, the nonreceipt of income, and in cases involving allegations of unreported illegal income, we may reject respondent's deficiency determinations if they constitute "naked assessments"; i.e., if they are not supported by the evidence. See, e.g., <u>Williams v. Commissioner</u>, 999 F.2d 760 (4th Cir. 1993), affg. T.C. Memo. 1992-153; <u>Cozzi v. Commissioner</u>, 88 T.C. 435, 444 (1987); <u>Dellacroce v. Commissioner</u>, <u>supra</u> at 280.

The present case, however, does not involve a naked assessment. In this case, there is substantial evidence linking petitioner to income from the illegal sale of marijuana during 1985, 1986, and 1987. That evidence consists not only of petitioner's arrest and subsequent criminal convictions for engaging in the illegal sale of marijuana, criminal forfeitures, and the testimony of various co-conspirators, but also petitioner's own admission that he was involved in a conspiracy to possess and to sell marijuana. In <u>Franklin v. Commissioner</u>, T.C. Memo. 1993-184, we held that indictment, guilty plea, and conviction are sufficient to support an inference linking a taxpayer to illegal income-generating activity.

Respondent's tax deficiency determinations herein against petitioners are entitled to the usual presumption of correctness.

As a general rule, gross income includes "all income from whatever source derived". Sec. 61(a). This includes income

obtained from illegal sources.  James v. United States, 366 U.S. 213 (1961); Browning v. Commissioner, T.C. Memo. 1991-93; sec. 1.61-14(a), Income Tax Regs.

Section 6001 requires taxpayers to maintain records sufficient to determine their correct Federal income taxes. Petzoldt v. Commissioner, 92 T.C. 661, 686 (1989).  If taxpayers fail to maintain or do not produce adequate books and records, respondent is authorized by section 446 to reconstruct the taxpayers' income.  Sec. 446(b); Petzoldt v. Commissioner, supra at 686-687; Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963); Bratulich v. Commissioner, T.C. Memo. 1990-600.

For the years in issue petitioners failed to maintain and to produce records of petitioner's illegal marijuana sales. Respondent reconstructed petitioners' income for each year by using the specific item method of proof, a method approved by this Court on numerous occasions.  See, e.g., Estate of Beck v. Commissioner, 56 T.C. 297, 353-354 (1971); Pappas v. Commissioner, T.C. Memo. 2002-127; Levine v. Commissioner, T.C. Memo. 1998-383, affd. 229 F.3d 1158 (9th Cir. 2000); Baker v. Commissioner, T.C. Memo. 1991-340, affd. 9 F.3d 1550 (9th Cir. 1993).

Based on information respondent's agent obtained from interviews with Posey and Cunningham and from undercover tapes,

respondent's agent identified a number of specific marijuana sales transactions in which petitioner participated with Posey and Cunningham in 1985, 1986, and 1987.  Based on the information obtained, respondent's agent determined petitioner's related gross receipts, cost of goods sold, and gross profits.

Petitioners do not dispute that petitioner participated in marijuana transactions with Posey and Cunningham, and for the most part petitioners do not dispute certain facts relied on by respondent in calculating petitioner's gross receipts, cost of goods sold, and gross profit therefrom.  To the contrary, at both his criminal trial and his trial herein petitioner generally admitted to his involvement in the marijuana transactions described by Posey and by Cunningham.[3]

Nevertheless, petitioner claims that he did not receive any net income or profit from the marijuana sales.  According to petitioner, he was merely assisting friends in the purchase and sale of marijuana.  Our view of petitioner's claim, however, is stated in Petzoldt v. Commissioner, supra at 697:

> There is nothing in the record which would indicate
> that petitioner sold marijuana for philanthropic
> reasons, expecting no profit for his efforts.  Common
> sense would dictate the conclusion that anyone who is
> in an illegal and dangerous business such as the
> dealing of drugs would demand a very large profit for
> his enormous risks. * * *

----

[3] The transcripts of petitioner's July 1992 criminal trial were admitted into evidence herein.

The danger and risks to which petitioner exposed himself could not be more apparent. Petitioner was arrested, tried, convicted, and sentenced to a lengthy period of incarceration in a Federal penitentiary. We reject petitioner's testimony that he did not have an ownership interest in the illegal drug transactions identified and used by respondent in his calculations of petitioners' income.

For purposes of the tax deficiencies herein, and based on petitioners' burden of proof and with the two exceptions noted below, we agree with respondent's calculations of petitioners' unreported income from marijuana sales, as set forth in the notices of deficiency for 1985, 1986, and 1987.

The first adjustment to be made to respondent's calculations relates to a November 1985 transaction involving purported gross receipts of $64,000 and, after $29,500 in cost of goods sold, a purported gross profit of $34,500. Respondent now concedes this transaction did not occur or should not be charged to petitioner.

The second adjustment to be made to respondent's calculations involves the losses of $73,000 and $42,000 that petitioner realized in 1986 and 1987, respectively, from the Florida transactions. Respondent's agent apparently overlooked or disregarded these loss transactions that are to be taken into account in the calculations of petitioners' unreported income for 1986 and 1987.

In addition to the transactions included in respondent's notices of deficiency, at trial respondent claims that in July of 1985 petitioner participated in an additional purchase and sale of marijuana not included in respondent's calculations. Respondent submits that this transaction involved petitioner's purchase of 500 pounds of marijuana for $275 per pound and petitioner's sale of the marijuana for $550 per pound. The inclusion of this transaction would result in an increased deficiency for 1985 on which respondent would bear the burden of proof. Rule 142(a); Achiro v. Commissioner, 77 T.C. 881, 890 (1981); Williams v. Commissioner, T.C. Memo. 1992-153, affd. 999 F.2d 760 (4th Cir. 1993). We find the evidence insufficient to satisfy respondent's burden on this alleged sale of marijuana.

On brief, respondent also takes the position that the $20 per pound paid to the Colonel by petitioner for security and for transporting the marijuana into the Untied States should not have been added by respondent's agent to petitioner's cost of goods sold for marijuana purchased from the Texas source. Respondent contends that under section 280E this amount is not properly treated as an item of petitioner's cost of goods sold.

Generally, we do not consider issues that are raised for the first time on brief, and we decline to consider this untimely raised issue. See, e.g., Foil v. Commissioner, 92 T.C. 376, 418 (1989), affd. 920 F.2d 1196 (5th Cir. 1990); Markwardt v.

Commissioner, 64 T.C. 989, 997 (1975); see also Grossman v.

Commissioner, 182 F.3d 275, 281 (4th Cir. 1999), affg. T.C. Memo.

1996-452.

Rejecting respondent's assertion of increased income for

1985 and adjusting respondent's calculations to account for the

1986 and 1987 losses on the Florida transactions mentioned

above,[4] we conclude that petitioner's sale of marijuana generated

the following gross receipts, cost of goods sold, and gross

profit:

|  | 1985 | 1986 | 1987 |
|---|---|---|---|
| Gross Receipts | $1,247,670 | $279,800 | $306,400 |
| Cost of Goods Sold | 659,910 | 259,525 | 147,490 |
| Gross Profit | 587,760 | 20,275 | 158,910 |

As indicated, under section 6653(b)(1) and (2) for 1985 and

under section 6653(b)(1)(A) and (B) for 1986, respondent

determined that petitioner is liable for additions to tax for

fraud.  Respondent also determined that for 1985 and 1986

petitioner is liable for additions to tax under section 6661 for

substantial understatements of tax.

No additions to tax were determined by respondent against

Martha McHan.

---

[4] Taking into account the 1986 and 1987 Florida loss
transactions also involved making certain other adjustments to
petitioner's gross receipts and cost of goods sold for 1986 and
1987.

For 1985, section 6653(b)(1) imposes an addition to tax equal to 50 percent of a tax underpayment if any portion of the underpayment is due to fraud, and section 6653(b)(2) imposes another addition to tax equal to 50 percent of the interest with respect to the portion of an underpayment attributable to fraud.

For 1986, section 6653(b)(1)(A) imposes an addition to tax equal to 75 percent of the tax underpayment attributable to fraud, and section 6653(b)(1)(B) imposes a separate addition to tax, equal to 50 percent of the interest payable under section 6601, on the portion of an underpayment attributable to fraud.

Further, for 1986, if fraud is established with respect to any portion, under section 6653(b)(2) the entire underpayment is to be treated as attributable to fraud, except to the extent the taxpayer establishes that some portion of the underpayment is not attributable to fraud.

For purposes of section 6653(b), fraud is defined as an intentional wrongdoing designed to evade tax believed to be owed. Powell v. Granquist, 252 F.2d 56 (9th Cir. 1958); Mitchell v. Commissioner, 118 F.2d 308 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939); Petzoldt v. Commissioner, 92 T.C. at 698; Estate of Pittard v. Commissioner, 69 T.C. 391 (1977).

Respondent bears the burden of proving each of the elements of fraud by clear and convincing evidence – an intent to evade tax and an underpayment of tax. Sec. 7454(a); Rule 142(b);

Castillo v. Commissioner, 84 T.C. 405, 408 (1985); Stone v. Commissioner, 56 T.C. 213, 220 (1971). To meet this burden, respondent must establish that an underpayment of tax exists and that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Grossman v. Commissioner, supra at 277; Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Parks v. Commissioner, 94 T.C. 654, 660 (1990); Recklitis v. Commissioner, 91 T.C. 874, 909 (1988); Castillo v. Commissioner, supra at 408-409; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Acker v. Commissioner, 26 T.C. 107, 112 (1956).

Respondent need not establish that tax evasion was petitioner's primary motivation but must show that a "'tax-evasion motive'" played a part in petitioner's conduct, including conduct designed to conceal another crime. Recklitis v. Commissioner, supra at 909 (quoting Worcester v. Commissioner, 370 F.2d 713, 717 (1st Cir. 1966), vacating T.C. Memo. 1965-199).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Castillo v. Commissioner, supra at 409; Rowlee v. Commissioner, supra at 1123; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never imputed or presumed; it must be established by

independent evidence. <u>Recklitis v. Commissioner</u>, <u>supra</u> at 910; <u>Castillo v. Commissioner</u>, <u>supra</u>; <u>Beaver v. Commissioner</u>, 55 T.C. 85, 92 (1970). Because, however, direct proof of a taxpayer's intent is often not available, fraud may be proved by circumstantial evidence. <u>Grossman v. Commissioner</u>, <u>supra</u> at 277; <u>Boyett v. Commissioner</u>, 204 F.2d 205, 208 (5th Cir. 1953), affg. a Memorandum Opinion of this Court; <u>Castillo v. Commissioner</u>, <u>supra</u>; <u>Stephenson v. Commissioner</u>, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); <u>Gajewski v. Commissioner</u>, <u>supra</u> at 200. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. <u>Spies v. United States</u>, 317 U.S. 492 (1943); <u>Castillo v. Commissioner</u>, <u>supra</u>; <u>Gajewski v. Commissioner</u>, <u>supra</u>; <u>Stone v. Commissioner</u>, <u>supra</u> at 223-224.

Over the years, courts have developed a nonexclusive list of factors that demonstrate fraudulent intent. These "badges of fraud" include: (1) Understating income; (2) maintaining inadequate records; (3) failing to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of income or assets; (6) failing to cooperate with tax authorities; (7) engaging in illegal activities; (8) an intent to mislead which may be inferred from a pattern of conduct; (9) lack of credibility of the taxpayer's testimony; (10) filing false documents; and (11) dealing in cash. <u>Spies v.</u>

United States, supra at 499; Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990); Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Recklitis v. Commissioner, supra at 910.

Often, a combination of factors may provide persuasive evidence of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603. A taxpayer's intelligence, education, and tax expertise also may be relevant for purposes of determining fraudulent intent. Stephenson v. Commissioner, supra at 1006; Iley v. Commissioner, 19 T.C. 631, 635 (1952).

We acknowledge that the facts and evidence in the trial record in this case as to the precise amount of total costs incurred, sales proceeds, and profit petitioner realized in each year from his illegal drug sales are not established with a great deal of clarity. Respondent relies heavily on the testimony of convicted felons and on grand jury testimony admitted at petitioner's criminal trial.

However, to find civil tax fraud, the exact amount of income underreported by a taxpayer need not be established. It is sufficient that respondent establish, by clear and convincing evidence, that petitioners failed to report substantial income for each year and did so intentionally, at which point the burden of proof shifts to the taxpayer to prove the amount of any

related expenses.  <u>Siravo v. United States</u>, 377 F.2d 469, 473 (1st Cir. 1967); <u>Franklin v. Commissioner</u>, T.C. Memo. 1993-184.

Petitioner has not produced credible evidence of additional expenses incurred relating to his purchase and sale of marijuana in excess of those allowed by respondent.  Accordingly, respondent has established by clear and convincing evidence that in 1985 and 1986 petitioner herein had significant additional income and income taxes relating to petitioner's illegal sale of marijuana that petitioner did not report on his 1985 and 1986 Federal income tax returns.

Petitioner was indicted and convicted on numerous charges relating to his purchase and sale of marijuana during 1985, 1986, and 1987.  No income relating to petitioner's sale of marijuana was reported on petitioners' joint Federal income tax return for the years in issue.  <u>Gatling v. Commissioner</u>, 286 F.2d 139, 145 (4th Cir. 1961) ("[P]roof of consistent and substantial understatements of income over a period of years may constitute persuasive and convincing evidence of fraud."), affg. T.C. Memo. 1959-224; see also <u>Patton v. Commissioner</u>, 799 F.2d 166, 171 (5th Cir. 1986), affg. T.C. Memo. 1985-148; <u>Merritt v. Commissioner</u>, 301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-172.

Petitioner dealt in large amounts of cash when buying and selling marijuana, but petitioner failed to maintain or to produce books and records relating to the transactions, see

Truesdell v. Commissioner, 89 T.C. 1280, 1302 (1987); Gajewski v. Commissioner, 62 T.C. at 200, and petitioner failed to inform his tax return preparer of his marijuana sales, see Estate of Mazzoni v. Commissioner, 451 F.2d 197, 202 (3d Cir. 1971), affg. T.C. Memo. 1970-37.

Taken as a whole, the evidence establishes that petitioner acted with the requisite fraudulent intent and that petitioner underreported substantial income for 1985 and 1986 relating to marijuana sales with fraudulent intent. We also note that Special Trial Judge Carluzzo observed petitioner's testimony and rejected, in his recommended findings of fact and conclusions of law, petitioner's testimony as to his limited participation in the marijuana sales transactions and concluded that petitioner had the requisite fraudulent intent in filing his 1985 and 1986 Federal income tax returns without reporting thereon his marijuana sales transactions.

We sustain respondent's determinations that petitioner is liable for the additions to tax for fraud prescribed under section 6653(b) for 1985 and 1986.

Respondent also determined additions to tax under section 6661 for 1985 and 1986. For tax returns due after December 31, 1982 (but before January 1, 1990), section 6661 provides for an addition to tax equal to 25 percent of the amount of any tax underpayment attributable to a substantial understatement. An

understatement is "substantial" if it exceeds the greater of (1) 10 percent of the tax required to be shown on the return or (2) $5,000. Sec. 6661(b)(1)(A). The understatement is reduced to the extent that the taxpayer (1) has adequately disclosed his or her position, or (2) has substantial authority for the tax treatment of an item. Sec. 6661(b)(2)(B); sec. 1.6661-6(a), Income Tax Regs. For 1985 and 1986, petitioner bears the burden of proof as to the issue of his liability for the addition to tax under section 6661. Rule 142(a); Cochrane v. Commissioner, 107 T.C. 18, 29 (1996).

Due to petitioners' substantial unreported income for 1985 and 1986, petitioner's income tax deficiencies for the taxable years in issue trigger the substantial understatement addition to tax under section 6661(b)(1). Petitioner has presented no evidence to show that respondent erroneously determined the additions to tax under section 6661. Petitioner is liable for the additions to tax under section 6661 for 1985 and for 1986.

Section 6501(c)(1) expressly provides that in the case of a false or fraudulent tax return with the intent to evade tax, the tax may be assessed at any time. Petitioners' argument that the period of limitations on assessment with respect to their income taxes for 1985 and 1986 expired before respondent issued the notices of deficiency to petitioners is rejected.

Because petitioners filed joint Federal income tax returns for 1985 and 1986, the assessment period of limitations under section 6501 remains open as to Martha McHan as well. <u>Stone v. Commissioner</u>, 56 T.C. at 227-228.

Other arguments raised by petitioners and not discussed herein have been considered, are without merit, and are rejected.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.